## TRADERS' & GENERAL INS. CO. v. POWELL.

### No. 2750.

Court of Civil Appeals of Texas. Beaumont.

May 10, 1935.

Rehearing Denied May 15, 1935.

Davis, Avery & Wallace, of Center, Collins & Fairchild, of Lufkin, and Lightfoot & Robertson, of Fort Worth, for appellant.

Sanders & McLeroy, of Center, for appellee.

COMBS, Justice.

This is a compensation suit wherein appellee, as plaintiff, was awarded compensation in a lump sum for total permanent disability at the rate of $20 per week. Tenaha Compress & Warehouse Company was the employer and appellant, Traders' & General Insurance Company, was the compensation insurance carrier.

This is the second appeal of this case. On the former appeal this court affirmed the judgment of the trial court awarding claimant compensation in a lump sum and discounting same at the rate of 6 per cent. Traders' & General Insurance Co. v. Powell, 44 S.W.(2d) 764. A writ of error was granted by the Supreme Court, the judgment of this court and the trial court reversed, and the case remanded for a new trial. The reversal was based upon error in fixing the rate of discount; it being the holding of the Commission of Appeals that the matter of the rate of discount should have been submitted to the jury. See Traders' & General Ins. Co. v. Powell, 65 S.W.(2d) 269.

The controlling facts appear without dispute and are in every material respect the same as on the former appeal. Briefly stated, the facts are:

The employer, Tenaha Compress & Warehouse Company, was engaged in the operation of a cotton compress and the storage of cotton in the town of Tenaha, Shelby county, Tex. A few days prior to June 30, 1930, appellee, Chester L. Powell, was employed by the compress company as a general laborer, and began work along with the other employees of the company in making repairs of the property. It appears from the evidence that the compressing season had closed and no cotton had been compressed for a month or more. But the plant was prepared to receive and store cotton, and some was then in storage. The employees were engaged in making needed repairs and putting the plant in condition for the fall business. For a day or two after Powell went to work he and the other employees worked at tearing up and replacing flooring in the plant. The manager, Mr. E. W. Muckleroy, then directed the employees to go to Center, Tex., about 10 miles distant, and dismantle a steel water tank and tower which had been purchased secondhand, remove it to Tenaha, and re-erect it on the premises of the compress. The old water tank then in use at the plant was inadequate to furnish a sufficient supply of water for the boilers, and was practically worn out.

Also it did not afford sufficient water or water pressure for fire protection for the plant and the cotton in storage. This resulted in high insurance rates on the stored cotton. It seems that such insurance was paid by the owners of the cotton, and Mr. Muckleroy testified that the high insurance rates threatened serious curtailment of the business of the compress. The secondhand water tank and tower had been purchased with the view of supplying the plant with adequate water for all purposes. All employees of the company, from the manager on down, went to Center, as directed, and began the work of tearing down the water tower. After they had been working about four days, Powell fell from the tower to the ground; a distance of about 60 feet, and as a result was very seriously injured. It is not disputed that he is totally and permanently disabled. The trial was to a jury, and, all issues submitted being answered in favor of appellee, judgment was entered in his favor awarding him compensation on the basis of $20 per week for 401 weeks, which was ordered to be paid in a lump sum, with a discount of 3 per cent.; that being the rate of discount fixed by the jury.

By its first two propositions appellant contends that appellee, at the time of his injury, was not an employee of the compress company within the meaning of the Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8306 et seq.), and within the meaning of the policy of insurance, in that under the undisputed evidence he was engaged in special work for his employer of an unusual and extraordinary nature.

The same contention on the identical state of facts here presented was urged by appellant on the former appeal of this case. On the former appeal this court held that the assignments did not present error. 44 S.W.(2d) 764, 765. As we construe the opinion of the Commission of Appeals, it did not disturb such holding. See 65 S.W. (2d) 269. The point is not mentioned in the opinion of the Commission of Appeals. However, as we have already said, the material facts bearing upon this issue were as fully developed on the former appeal as upon this one. On the undisputed facts, the proposition here presented was fundamental, going to the very foundation of the suit. If appellant's proposition that appellee cannot recover because his working on the water tank, where his injury was sustained, removed him from the protection of the Workmen's Compensation Law, were cor-

rect, then there could be no recovery, and a remand for another trial would have been a futile thing.

█ What we have said above applies with equal force to appellant's propositions complaining of the method employed for determining appellee's compensation rate. Appellant's proposition in this connection is to the effect that the weekly wage of $39, as determined by the jury, was based upon the daily wage of $6.50 per day, which, at the time of the injury, was being paid to appellee for a "temporary and unusual employment," and the trial court should not have permitted the jury to fix the weekly wage upon such temporary rate of pay. This very question was before us on the former appeal, and it was held by this court that the method used for determining the wage rate was correct. 44 S.W.(2d) 764, 765, point 7. That holding of this court, like the one just discussed, was not referred to in the opinion of the Commission of Appeals. But, the Supreme Court having taken jurisdiction for the purpose of correcting the errors of this court, and the case having been remanded for a new trial, we must presume that it corrected all erroneous holdings made by us with respect to issues which would necessarily arise on another trial.

█ Appellant assigns as error the action of the trial court in submitting to the jury for finding the matter of reasonable rate of discount for a lump sum settlement; it being appellant's contention that the discount is fixed by statute at 6 per cent. This court so held on the former appeal, but it was upon that very point that the Supreme Court reversed our judgment and remanded the case. The trial court submitted the matter to the jury in accordance with the opinion of the Commission of Appeals. R. S. Sanders, a banker, and whose testimony is not disputed in any way, testified that 3 per cent. would be a reasonable discount rate on the deferred payments in case of a lump sum settlement. The jury fixed the rate accordingly.

██ On oral argument counsel for appellant conceded that on the former appeal its contention of no liability because appellee was engaged at the time of his injury in tearing down the water tank was urged in this court and in the Supreme Court, but it was nevertheless insisted that we should re-examine the question of liability, particularly in view of the subsequent action of the Supreme Court in granting the writ of error on the dissenting opinion of Justice Bond in Texas Employers' Ins. Ass'n v. Wright (Tex. Civ. App.) 56 S.W.(2d) 926. We cannot concur in this contention. In the first place, as we have already said, we regard the action of the Supreme Court, in remanding the case for another trial, with the controlling facts before it, as a finding that liability was shown, which holding is binding upon us. Moreover, because of difference in facts, whatever holding may ultimately be made in the Wright Case, it would not control this case. In the Wright Case the employer, a flour milling company, began the erection of a building to be used in the manufacture of stock feed, and Wright, who had formerly been employed as a sweeper in the flour mill, was injured while working on the construction of the new building. As we interpret Judge Bond's dissenting opinion, it was his view that the employer, in erecting the new building, had launched a new line of business separate and apart from its usual business of milling flour and its products, and upon this construction of the facts it was his view that the erection of a building for such purpose could not reasonably be anticipated by the insurer when it issued its policy covering the employer's flour milling business. However, Judge Bond made it plain that he did not differ with the majority holding that mere repairs and replacements as an incident to the usual business would come within the purview of the policy by stating in the course of his opinion: "It might be reasonably anticipated that the milling Company would through necessity, make repairs and replacements and even build additions to its business." In the case before us the compress company, in tearing down and removing the water tank and erecting it in connection with its plant, was doing just that and nothing more. It had not launched a new business or gone into the business of demolishing and erecting steel tanks. It may be that demolishing and erecting a water tank was unusual in the sense that that specific thing was not often done. In the same sense the tearing up and replacing of a floor or the installation of a new boiler might be unusual. But certainly the making of such incidental repairs, replacements, and improvements by the regular employees as a mere incident of the regular business of the compress company was not unusual. We think it clear that an employee regularly employed in the usual business of his employer and subject to his employer's orders should not

be denied the protection of the Workmen's Compensation Law merely because at the time of his injury he was, under the direction of the employer, doing a particular piece of work which the employee was not ordinarily called upon to do. No adjudicated case with which we are familiar has ever gone so far as to make such holding. Were such the rule, then a regular employee would be forced, at his peril, to ascertain for himself in every instance where his employer directs him to perform a specific piece of work whether he would, by the performance of it, remove himself from the protection of the Workmen's Compensation Law designed for his protection.

Finding no error, the judgment of the trial court is in all things affirmed.