**UNITED STATES FIRE INSURANCE COMPANY, Appellant,**

v.

**James D. BIGGS, Appellee.**

**No. 9114.**

Court of Civil Appeals of Texas, Amarillo.

May 28, 1980.

Rehearing Denied June 25, 1980.

Stokes, Carnahan & Fields, Gary W. Barnard, Amarillo, for appellant.

Robinson & Fotheringham, E. Wayne Campbell, Amarillo, for appellee.

REYNOLDS, Chief Justice.

Posed is this question: did a part-time law clerk, who was accidentally injured during his office hours preliminarily to repairing the roof of an apartment building owned by, and at the instance of, an associate of a one-owner law office, sustain the injury in the course of his employment within the meaning of the workers' compensation coverage for the employees of the office? The trial court overruled the employer's insurance carrier's motion for an instructed verdict and submitted the cause to the jury. The jury found that the injury was sustained in the course of employment with the law office owner, and the court rendered judgment on the jury's verdict favorable to the law clerk. After its motion for judgment non obstante veredicto was overruled, the carrier appealed.

The record compels the holding that as a matter of law the injury was not sustained in the course of the law clerk's employment. Reversed and Rendered.

Tom Upchurch, Jr., an attorney with his principal office in Amarillo, engages in an office and trial practice of law under the name of Law Office of Tom Upchurch, Jr., and Associates. In the main, his practice consists of insurance, personal injury and workers' compensation claims with specialization in labor cases. The practice is conducted with the assistance of a bookkeeper, secretarial personnel, salaried attorneys referred to as associates, and college students hired as law clerks on a part-time basis. Upchurch's practice requires his frequent absences from his principal office, but he retains and exercises the sole and final authority to hire, pay and fire his salaried employees.

Among the salaried employees at the times material were attorneys John Lesly and Steven F. Scott, Jr. In January of 1974, Lesly interviewed James D. Biggs, a college student, for the position of law clerk, to work at an hourly rate during hours compatible with his college attendance. Lesly recalled that he discussed briefly with Biggs some of the things he would be doing as a law clerk; Biggs remembered that Lesly described the duties and said he was to respond to the instructions from anyone in the office, including the secretaries. At the close of the interview, Biggs was introduced to Upchurch. Later in the day, Lesly, with Upchurch's approval, notified Biggs that he was hired.

Although never given an express job description, Biggs performed duties normal to the office practice, such as running errands to deliver depositions, securing office supplies, filing papers at the courthouse, and interviewing and signing up clients. In addition, he performed tasks he considered to be of a personal nature for Upchurch and other office employees during and after normal office hours. Illustratively, he baby-sat with Upchurch's children, delivered packages to Upchurch's home, and drove Upchurch's automobiles to and from Fort Worth, in the vicinity of which Upchurch maintained an office. On one occasion at Upchurch's direction, Biggs assisted a secretary in moving from Amarillo to Fort Worth to work in Upchurch's area office. Acknowledging these and other performances by Biggs for which he was paid, Upchurch considered them done in the scope of Bigg's employment by Upchurch inasmuch as Upchurch was freed to conduct his practice.

Further, Biggs recounted that once he was instructed by a secretary to get her car from the repair shop. At Scott's direction, he changed a flat tire on Scott's car and, in other instances, he delivered packages for Scott. Scott did not remember asking Biggs to do things of a personal nature, and declared that he never asked Biggs to do personal things and bill his time to Upchurch's law office.

Still further, Biggs recalled that he watered plants at Lesly's home during one period when Lesly was out of town. He also changed a flat tire on Lesly's car. More than once, he delivered supplies to, and picked up the rent at, a two-story apartment building owned by Lesly and located some five or six blocks from Upchurch's law office. In August of 1974, Biggs repaired a leak on the roof of the apartment building. Biggs purchased shingles for the repair with Lesly's check made payable to the Lumber company. Seven days later, Lesly gave Biggs, and Biggs cashed, Lesly's check made payable to Biggs in the sum of twenty dollars, the purpose for which was inscribed on the check as "Roof Repair." Yet, according to Biggs, the check was to purchase supplies for the roof repair, which Biggs purchased and gave the receipt and change to Lesly. Biggs further said Lesly told him this was part of his duty and to list it on his hours for the law office. However, Lesly's testimony was that the check was Biggs' compensation for making the roof repair. Lesly also testified that he asked Biggs to do things as a favor, except in instances where he would personally pay for the work done.

Although Biggs never told Upchurch about the personal errands for the other employees, he said that from time to time Upchurch would make comments about it, usually when Upchurch was leaving, and never told Biggs not to do those things. Biggs recalled that one time Upchurch said, "I guess you have been to Lesly's picking up the rent on those apartments." Upchurch denied making the remark or any comment like it, disclaiming any knowledge of Lesly's using Biggs to collect rent or make repairs at the apartment building, and saying, "I would not have permitted that type of thing." Scott, who knew, and said Upchurch was aware, that Biggs was doing some work at Lesly's apartments, gave testimony that he informed Upchurch that Biggs was being used for the personal benefit of Lesly. Upchurch, Scott and Lesly had a discussion during which Upchurch told Lesly it was not to happen any more, and Lesly assured Upchurch that Biggs' personal acts for him were not done on Upchurch's time and were not being billed to Upchurch. Scott added that Upchurch instructed Lesly to cease that and to inform Biggs.

Biggs kept account of the hours he spent working for the law office, including the time spent on personal errands for Upchurch and his employees, and the expenses he incurred. Periodically, he submitted his hours and expenses to the bookkeeper. Unquestioned by anyone, Biggs' submitted accounts were paid by Upchurch.

Biggs testified that he worked on Saturdays from 9 a. m. until 1 p. m. On Saturday, December 6, 1975, he reported to the law office before 9 a. m. and began his duties. About 10:45 a. m., so Biggs said, he was told by Lesly it was going to rain, the roof needed fixing again, and to go straight over to the apartment building. Lesly's version is that he and Biggs previously had discussed the roof repair, he asked Biggs if he still planned on doing it, and Biggs indicated he was going to do it that day. Lesly denied that he ordered Biggs to do the work.

It is disputed whether Biggs left the law office before or after Lesly and Scott. In any event, Lesly and Scott, whose work was finished for the day, and another salaried attorney departed for the Amarillo Club for lunch. Biggs, accompanied by another law clerk, who at times had picked up rents at the apartments and delivered them on his way home as a personal favor to Lesly, went to the apartment building. At approximately 11:40 a m. and following what he said were Lesly's directions in trying to reach the roof, Biggs fell two stories to a concrete driveway and sustained injuries. This litigation with United States Fire Insurance Company, the carrier of workers' compensation insurance issued to Upchurch, resulted.

To recover workers' compensation benefits, Biggs, the employee, was required to prove, among other matters, that his injury was sustained in the course of his employment with Upchurch, the employer. Tex. Rev.Civ.Stat.Ann. art. 8306, *et seq.* (Vernon 1967). While the phrase "in the course of employment" is not defined in the Texas Workers' Compensation Law, Section 1 of Article 8309 does provide that an "injury sustained in the course of employment"

shall include all other injuries of every kind and character having to do with and originating in the work, business, trade or profession of the employer received by an employee while engaged in or about the furtherance of the affairs or business of his employer whether upon the employer's premises or elsewhere.

The trial court substantially so instructed the jury, further adding, in language taken from another part of the section, that:

An employee who is employed in the usual course of the trade, business, profession or occupation of an employer and who is temporarily directed or instructed by his employer to perform service outside the usual course of trade, business, profession or occupation of his employer is also acting in the "course of employment" while performing such services pursuant to such instructions or directions.

■ For more than half a century, the burden imposed by the statute has remained constant: the claimant must establish that his injury both (1) was of a kind and character that had to do with and originated in the employer's work, business, trade or profession, and (2) occurred while the employee was engaged in or about the furtherance of his employer's affairs or business. *Shelton v. Standard Insurance Company*, 389 S.W.2d 290, 292 (Tex.1965); *Aetna Life Ins. Co. v. Burnett*, 283 S.W. 783, 784 (Tex.Comm'n App. 1926, judgmt. adopted). If either requirement is not established, the claimant has failed to meet his burden of proving that his injury was sustained in the course of employment. *Accord, Texas General Indemnity Company v. Bottom*, 365 S.W.2d 350 (Tex.1963).

■ Given these criteria for testing the force of the evidence, the evidence disproves that Biggs' injury was sustained in the course of employment. Biggs was employed to clerk for Upchurch's law office, and inherent in that employment is an engagement in furtherance of the affairs or profession of Upchurch. The profession of Upchurch is the practice of law, and the evidence is conclusive that he has no connection with Lesly's apartments. Although Lesly was authorized to conduct the functions of the law office, even to the extent of being Upchurch's agent for that purpose, there is no testimony that Lesly had any authority beyond that of an associate of the law office. There is neither testimony nor testimonial inference to the effect that Lesly had authority as Upchurch's agent to direct Biggs' action beyond the scope of Upchurch's affairs or profession. Whether or not Lesly's statements to Biggs amounted to an instruction or direction to repair Lesly's roof, the evidence is conclusive that Upchurch did not so direct Biggs. Moreover, there is no testimony that Upchurch authorized Lesly to direct, or even to request, Biggs to do anything connected with Lesly's apartments, either on this particular occasion or at any other time.

Thus, Biggs' undertaking for Lesly was not relevant to, and was apart from, the work he was employed to do; and the fact that Biggs' injury was sustained during his normal working hours as a law clerk for which he was paid by Upchurch, does not bring Biggs within the scope of his employment for Upchurch at the time of his injury. *Hogan v. Hanover Insurance Company*, 406 S.W.2d 217, 218 (Tex.Civ.App.—Waco 1966, writ ref'd n. r. e.). Hence, the evidence, being conclusive that Biggs' undertaking for Lesly was not at the direction of Upchurch and was not in furtherance of Upchurch's affairs or profession, admits of but one conclusion: Biggs' injury was not sustained in the course of employment.

Parallel reasoning produced the same result in a similar factual situation, albeit more favorable for a compensable injury, in *Great American Indemnity Co. v. Kingsbery*, 201 S.W.2d 611 (Tex.Civ.App.—Amarillo 1947, writ ref'd n. r. e.). There, Breedlove owned an airport where his aerial service for powered airplanes was conducted under the general management of Williams. Kingsbery, an experienced pilot of powered airplanes, was employed by Breedlove as a pilot, instructor and salesman of powered airplanes. In the presence of Breedlove, Williams and one Hall, the owner of a two seat, dual control glider, discussed inaugurating a glider service at, and in connection with, the airport, the glider to be piloted by Hall or by employees of the airport. On the day tentatively agreed upon for the inaugural, Hall decided to make a flight. Kingsbery said he was instructed by Williams, who denied giving an instruction, to enter the glider for the purpose of acquainting himself with its operation so he could act as a glider pilot. After the glider was airborne with Hall as pilot, Kingsbery was permitted to pilot the glider. Descending to the runway, the glider suddenly crashed and Kingsbery was injured.

Kingsbery sought, and jury findings entitled him to, workers' compensation benefits from Breedlove's insurance carrier for injuries sustained in the course of employment. In holding the trial court erred in not instructing a verdict because no evidence supported the jury's finding that Kingsbery's

injuries were received in the course of employment, the appellate court reasoned, in part, as follows:

Whether the statement of Williams amounted to an instruction or not, however, the testimony is conclusive that appellee's [Kingsbery's] employer, Breedlove, did not instruct appellee to make the flight and it wholly fails to connect him in any way with the proposed glider enterprise. It is not shown that he gave Williams any authority to direct appellee to make the flight nor does the testimony connect him in any way with the arrangement between Williams and Hall to inaugurate the glider service. . . . There is no testimony to the effect that Williams had authority beyond that which was designated by Breedlove and perhaps implied from his designation as manager. . . . There is no testimony to the effect that he [Williams] had authority as Breedlove's agent to add to the business that was then being carried on . . . .. It would seem to follow from these observations that if appellee entered the glider and made the flight with Hall he thereby, for the moment, turned aside from his employment with the Breedlove Air Service and was not engaged in the course of trade, business, profession or occupation of his employer at the time he received his injuries.

201 S.W.2d at 615–16. Likewise, here, Biggs turned aside from his employment as a law clerk and was not engaged in the course of Upchurch's profession when he was injured attempting Lesly's roof repairs.

Nevertheless, Biggs relying upon *St. Paul Ins. Co. v. Van Hook*, 533 S.W.2d 472 (Tex. Civ.App.—Beaumont 1976, no writ), and other cases of like import, submits that his injury is compensable because there is a causal connection between his employer's business and his accident. The thrust of his argument is that, even assuming going to the apartments was not a part of his usual job, he departed from his usual duties pursuant to instructions or directions of his employer and encountered a risk arising incident to his employment. We disagree.

Our disagreement is not with the holdings of *St. Paul Ins. Co. v. Van Hook, supra*, and the other cases cited by Biggs. In *Van Hook*, the facts were that Van Hook, a seventeen year old part-time janitor for the Y.M.C.A. which rented part of a building was told by his supervisor to keep people from vandalizing the building. When Van Hook told rock throwers heaving rocks through windows on parts of the building not leased by the Y.M.C.A. to stop, a challenge and a fight ensued. Van Hook was injured. It was held the injury was sustained in the course of employment because the evidence, justifying a belief that the challenge and the fight were directed against Van Hook because of his employment, was sufficient to show a causal connection between his employment and his injuries.

Our disagreement, rather, is with the validity of Biggs' argument. First, the argument is premised upon the erroneous statement that Biggs departed from his usual duties pursuant to instructions or directions of his employer. As previously written, the evidence is undisputed that the employer, Upchurch, gave no such instructions or directions, and there is no testimony that any such instructions or directions were given by his authority.

Second and as previously penned in different words, no evidence shows a causal connection between Upchurch's profession and Biggs' injury. In regard to the causal connection, it has been stated that "a risk is incidental to employment when it belongs to or is connected with what a workman has to do in performing his contract of service." *Safety Casualty Co. v. Wright*, 138 Tex. 492, 160 S.W.2d 238, 242 (1942). Stated in another way, "an injury has to do with, and arises out of, the work or business of the employer, when it results from a risk or hazard which is necessarily or ordinarily or reasonably inherent in or incident to the conduct of such work or business." *Lumberman's Reciprocal Ass'n v. Behnken*, 112 Tex. 103, 246 S.W. 72, 73 (1922). Applying these principles to the evidence, it is at once apparent that Biggs' injury was unconnect-

ed with his duties as a law clerk for Upchurch. The injury had nothing to do with, and did not arise out of, the professional work of Upchurch. The risk or hazard Biggs encountered was neither inherent in or incident to the conduct of Upchurch's practice of law.

Still, Biggs urges that under the liberal construction we are required to give the compensation law, compensation should be allowed even if we conclude, as we effectively have, that the task he performed for Lesly was purely private and personal to Lesly. Initially, he infers that his performance for Lesly enabled Lesly to remain at the law office and further enabled Lesly to go with the other attorneys to the Amarillo Club for lunch, where they frequently discussed the law office affairs. The bar to drawing the inference is that no testimony shows either was the reason for Biggs' personal mission; indeed, the only testimony on the subject is that the attorneys had finished their work for the day. Moreover, there is no testimony suggesting that Lesly's performance of the task undertaken by Biggs would have been in furtherance of Upchurch's affairs or profession.

Secondly, Biggs asserts that any view other than allowance of compensation places him in this intolerable dilemma: if he complies with Lesly's order, he forfeits compensation protection; if he does not comply, he gets fired. The brief answer is that the record is devoid of evidence that Biggs' employer, Upchurch, would have fired him had he refused to perform the personal mission for Lesly.

Accordingly, there being no evidence that Biggs' injury was sustained in the course of employment, the insurance carrier was entitled to an instructed verdict. Point of error number one is sustained; the remaining two points are mooted.

The judgment of the trial court is reversed, and judgment is here rendered that James D. Biggs take nothing by this action against United States Fire Insurance Company.