**James D. BIGGS, Petitioner,**

v.

**UNITED STATES FIRE INSURANCE COMPANY, Respondent.**

No. B–9652.

Supreme Court of Texas.

Jan. 28, 1981.

Rehearing Denied Feb. 25, 1981.

Robinson & Fotheringham, E. Wayne Campbell, Amarillo, for petitioner.

Stokes, Carnahan & Fields, Gary W. Barnard, Amarillo, for respondent.

McGEE, Justice.

This action for workers' compensation presents the sole question of whether James D. Biggs was injured in the course of employment within the meaning of the Texas Workers' Compensation Act. The trial court rendered judgment for Biggs on a jury verdict. The court of civil appeals reversed the judgment of the trial court and rendered a take-nothing judgment. 601 S.W.2d 132. We reverse the judgment of the court of civil appeals and remand the cause to that court.

James D. Biggs, a law clerk employed by Tom Upchurch, Jr., brought this workers' compensation suit against his employer's insurance carrier, United States Fire Insurance Company, to recover for accidental injuries allegedly sustained in the course of employment. On Saturday, December 6, 1975, Biggs fell and was seriously injured during working hours while attempting to repair the roof on a two-story apartment unit owned by, and at the direction of, John Lesly, an associate of the law firm. Trial was to a jury. In answer to special issue No. 1, the jury found that Biggs' injuries occurred in the course of employment with Upchurch; whereupon, the trial court rendered judgment for Biggs based on a favorable jury verdict.

On appeal, the court of civil appeals expressly sustained points of error presented by United States Fire Insurance Company asserting that there is no evidence to support the jury's finding that Biggs was in the course of his employment at the time of his injuries. It is this holding of the court of civil appeals that we are now called on to review. In doing so, we must consider only that evidence and the reasonable inferences that can be drawn therefrom, in their most favorable light, to support the jury's finding while disregarding all others. *East Texas Theatres, Inc. v. Rutledge*, 453 S.W.2d 466 (Tex.1970); *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965).

The evidence developed at trial on this point was sharply disputed. But, viewed in its most favorable light to support the jury's finding, the material evidence is as follows: In January 1974, James D. Biggs was employed as a law clerk by Tom Upchurch, Jr., who practiced law under the name of Tom Upchurch, Jr. and Associates. At his principal office in Amarillo, Upchurch also employed two attorneys as associates, i. e., Steven F. Scott and John Lesly, a bookkeeper, and several secretaries. While employed by Upchurch, Biggs performed a wide variety of duties, consisting primarily of running errands for Upchurch and the employees in the law office. Many of these errands were related to Upchurch's law practice and many were personal errands for Upchurch, the associates, and the secretaries.

Personal errands that Biggs performed at the direction of Upchurch included babysitting for Upchurch's children, taking his children to dinner at Six Flags Over Texas, driving Upchurch's automobiles to and from Fort Worth for repairs, delivering packages and liquor to Upchurch's home, changing tires and repairing Upchurch's automobile, and acting as a night watchman at a warehouse owned by one of Upchurch's friends.

In addition, Biggs performed personal errands for the associates, Scott and Lesly. Biggs testified that he changed a flat tire on Scott's car and a battery in the car of Scott's wife. Once, Scott directed him to pick up and deliver packages to Scott's wife. Biggs testified that on separate occasions Scott required him to pick up liquor, ammunition, and sporting equipment. For Lesly, Biggs also changed a flat tire and a battery. One weekend, Lesly directed Biggs to water plants at Lesly's home while his wife was out of town. Routinely, Lesly directed Biggs to pick up rents from the manager of an apartment unit that Lesly owned several blocks from the law office. In fact, Lesly even instructed Biggs to pick up these rents after Biggs returned to work after his injuries of December 6, 1975. On other occasions, Biggs also delivered screens and made repairs on Lesly's apartment unit.

Biggs was certain that Upchurch knew of these personal errands because Upchurch often made passing remarks about it. For instance, Biggs testified that Upchurch once commented, "I guess you have been to Lesly's picking up rents on those apartments," and on another occasion, "I guess you have been out to Scott's working on that car again." Scott also testified that he informed Upchurch of these personal errands that Biggs was being required to perform for Lesly and that he, Upchurch, and Lesly discussed the matter. According to Lesly, however, Upchurch only discussed not using Biggs and other law clerks for changing tires. Nevertheless, Biggs was never told of the discussion nor was he ever instructed by anyone not to perform these personal errands. To Biggs, everyone was

the boss; he thought his job was to do whatever anyone told him, and he was never told otherwise.

For all these personal errands, Biggs turned in his time and was paid by the bookkeeper from the account of Tom Upchurch, Jr. There is testimony, although Upchurch denies it, that Upchurch knew that he was paying Biggs for all these personal errands. In fact, the Monday following Biggs' accident he was paid by Upchurch's office for his Saturday's work.

■ An essential element that an employee must prove in order to recover workers' compensation benefits is that the injury was sustained in the course of employment. Article 8306 § 1.[1] Unless this is shown, the employee can only seek relief for his injury through his common law causes of action and in such instances the employer retains all common law defenses. As a general rule an injury sustained in the course of employment (1) must be of a kind or character originating in or having to do with the employer's work, and (2) must have occurred while engaged in the furtherance of the employer's business or affairs. Article 8309 § 1; *Texas Employers Insurance Ass'n v. Page*, 553 S.W.2d 98 (Tex.1977); *Shelton v. Standard Insurance Co.*, 389 S.W.2d 290 (Tex.1965); *Texas General Indemnity Co. v. Bottom*, 365 S.W.2d 350 (Tex.1963).

There are exceptions to this general rule. One exception applicable to this case is found in article 8309 § 1. This section provides in part, and the jury was instructed, that:

> "[A]n employee who is employed in the usual course of the trade, business, profession or occupation of an employer and who is temporarily directed or instructed by his employer to perform service outside of the usual course of trade, business, profession or occupation of his employer is also an employee while performing such services pursuant to such instructions or directions; ..."

---

1. All statutory references are to Vernon's Annotated Texas Civil Statutes.

Under this so-called "temporary direction" exception, if an employee is directed by his employer and is then injured, his injury is sustained in the course of his employment. In other words, an employee does not forfeit his workers' compensation coverage while acting in obedience to his employer's orders. *See Traders & General Insurance Co. v. Ihlenburg*, 243 S.W.2d 250 (Tex.Civ.App.—San Antonio 1951, writ ref'd). The purpose underlying the enactment of the exception was to eliminate a dilemma that would otherwise face an employee when instructed to perform a task outside his employer's usual business, to-wit: either obey his employer and lose his compensation coverage or disobey his employer and lose his job. 1 Larson, Workmen's Compensation Law, § 27.40 (1972); *see generally, Traders & General Insurance Co. v. Powell*, 82 S.W.2d 747, 750 (Tex.Civ. App.—Beaumont 1935), *rev'd on other grounds*, 130 Tex. 375, 110 S.W.2d 559 (1937).

The court of civil appeals considered this exception and concluded that it is inapplicable to the case at hand. It reached this conclusion on two grounds: (1) the exception only applies to directions given by employers and the evidence is undisputed that Biggs was directed by Lesly, and not Upchurch, his employer; and (2) there is no testimony or testimonial inference that Lesly's directions to Biggs to repair the roof in question were given with Upchurch's authority.

It should be recognized at the outset that, in line with the express terms of the "temporary direction" exception, compensation has generally been allowed whenever the employer directs or instructs any work done. *Texas General Indemnity Co. v. Luce*, 491 S.W.2d 767 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.); *Texas Employers Insurance Ass'n v. Weber*, 386 S.W.2d 835 (Tex.Civ.App.—Austin 1965, writ ref'd n.r.e.); *Texas Employers' Insurance Ass'n v. Davidson*, 295 S.W.2d 482 (Tex.Civ.App.—Fort Worth 1956, writ ref'd n.r.e.); *Traders & General Indemnity Co. v. Ihlenburg, supra; Texas Employers' Insur-*

*ance Ass'n v. Harrison*, 207 S.W.2d 168 (Tex.Civ.App.—Fort Worth 1947, writ ref'd n.r.e.). Only a few cases, however, have been decided in this State involving the exact point presented herein; that is, where directions are given by one of the employer's supervisory personnel as opposed to the employer himself. *See Federal Underwriters Exchange v. Lehers*, 132 Tex. 140, 120 S.W.2d 791 (1938); *Great American Indemnity Co. v. Kingsbery*, 201 S.W.2d 611 (Tex. Civ.App.—Amarillo 1947, writ ref'd n.r.e.), and *St. Paul Insurance Co. v. Van Hook*, 533 S.W.2d 472 (Tex.Civ.App.—Beaumont 1976, no writ). A survey of these cases reveals that the exception also applies to work ordered by a supervisor so long as the order is authorized by the employer, regardless of whether the order benefits the employer's business or is personal in nature.

The case of *Great American Indemnity Co. v. Kingsbery*, 201 S.W.2d 611 (Tex.Civ. App.—Amarillo 1947, writ ref'd n.r.e.), is illustrative. In that case, Breedlove, the employer, owned an airport and employed Williams as his general manager to operate services for powered airplanes. Kingsbery was employed by Breedlove as a pilot, instructor, and salesman of powered aircraft. Hall, who owned a glider and stored it in one of Breedlove's hangars, and Williams discussed inaugurating a private venture to instruct courses in glider training. On the day finally agreed on to begin the glider service, Hall decided to make a flight. Williams instructed Kingsbery to enter the glider to acquaint himself with its operation so he could act as a glider pilot. When descending to the runway, the glider crashed and Kingsbery was injured.

Kingsbery sued Breedlove's insurer for workers' compensation benefits, alleging his injury was sustained in the course of employment. In holding that there was no evidence that Kingsbery was injured in the course of employment, the court of civil appeals stated:

"It is not shown that [Breedlove] gave Williams any authority to direct [Kingsbery] to make the flight nor does the testimony connect him in any way with

the arrangement between Williams and Hall to inaugurate the glider service. . . . It does not appear that Williams purported to represent Breedlove or to bind him to the agreement with Hall but even if he had purported to represent Breedlove, the testimony reveals no authority from Breedlove under which he was authorized to do so. . . . There is no testimony to the effect that Williams had authority beyond that which was designated by Breedlove and perhaps implied from his designation as manager. The implication goes no further, however, than Breedlove's testimony, that is, that he had no further authority than to manage the airport and conduct the business that was then being operated by Breedlove. There is no testimony to the effect that he had authority as Breedlove's agent to add to the business that was then being carried on and take into it the additional glider service, nor to arrange for any sort of a partnership between Breedlove and Hall in connection with it."

*Id.* at 615, 616.

Implicit in the *Kingsbery* decision is the fact that had Williams been given authority from Breedlove to instruct Kingsbery to make the glider flight, the "temporary direction" exception would have placed Kingsbery's injury within the scope of employment with Breedlove. And, since the only authority that Williams had from Breedlove was that implied from his position as general manager, he was only authorized to give orders that benefited Breedlove's airplane business.

Biggs contends that the court of civil appeals erred in reversing the judgment of the trial court, because there is some evidence that Biggs was injured in the course of employment with Upchurch. More specifically, he urges that the court of civil appeals erred in disregarding evidence of Lesly's apparent authority from Upchurch to use him for personal errands and, as a result of this authority, he remained in the course of employment with Upchurch under the "temporary direction" exception while performing such errands at Lesly's direction. We agree.

■ Apparent authority is based on the doctrine of estoppel, and one seeking to charge the principal through apparent authority of an agent must establish conduct by the principal that would lead a reasonably prudent person to believe that the agent has the authority that he purports to exercise. *Southwest Title Insurance Co. v. Northland Building Corp.*, 552 S.W.2d 425 (Tex.1977); *Douglass v. Panama, Inc.*, 504 S.W.2d 776 (Tex.1974); *Chastain v. Cooper and Reed*, 152 Tex. 322, 257 S.W.2d 422 (1953). When an agent acts within the scope of this apparent authority, the acts bind the principal as though the agent actually possessed such authority. *See Cox, Inc. v. Humble Oil and Refining Co.*, 16 S.W.2d 285 (Tex.Comm'n App.—1929, judgmt adopted). Apparent authority provides authorization where the actual authority of the agent is lacking. Likewise, an employee should be allowed to rely on apparent authority to establish a supervisor's authority from the employer in order to bring his injury under the "temporary direction" exception, when actual authority on the part of the supervisor is lacking.

■ In this case, there is some evidence that Lesly had the apparent authority from Upchurch to use Biggs for personal errands including repairing the roof on the apartment unit on the date in question. There is evidence that Upchurch knew and acquiesced in the use of Biggs by Lesly and other employees for personal errands. In fact, Biggs was never told by anyone not to perform such errands. There is also evidence that Upchurch's office paid Biggs for the time spent on these errands and that Upchurch knew of these payments. From this evidence, the jury could have concluded that Upchurch's conduct induced Biggs to believe that Lesly had the authority to use

him for personal errands. Because there is some evidence that Lesly's use of Biggs for personal errands was within the limits of his apparent authority, we hold that the "temporary direction" exception applied to bring Biggs' injury within the scope of employment with Upchurch.

United States Fire Insurance Company also urged in the court of civil appeals that the evidence is factually insufficient to support the jury's finding that Biggs was injured in the course of employment with Upchurch. Because this factual insufficiency point is within the exclusive jurisdiction of the court of civil appeals, we must remand this cause to that court for a determination of this point. *Custom Leasing, Inc. v. Texas Bank & Trust Co. of Dallas*, 491 S.W.2d 869 (Tex.1973).

The judgment of the court of civil appeals is reversed and the cause is remanded to that court for further proceedings consistent with this opinion.