**Opinion filed January 24, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00008-CV
_____

## SEVEN N. HOLDINGS, L.P. AND 7N OIL & GAS BONANZA, L.P., Appellants

## V.

## MATHIS & SONS, INC., Appellee

**On Appeal from the 39th District Court
Haskell County, Texas
Trial Court Cause No. 11,670**

### M E M O R A N D U M   O P I N I O N

Seven N. Holdings, L.P. (Seven Holdings) and 7N Oil & Gas Bonanza, L.P.

(7N Oil & Gas) appeal the trial court's judgment that maintained a lien against

Seven Holdings and awarded attorney's fees and costs to Mathis & Sons, Inc. (Mathis & Sons). We affirm.

## I. *Evidence at Trial*

The "Wirz Lease" refers to an oil, gas, and mineral lease originally entered into between Seven Holdings, as lessee, and Richard and Kay Wirz, as lessors. The lease was recorded in the official public records of Baylor County. Seven Holdings assigned its interest in the lease to 7N Oil & Gas on August 27, 2008, and this assignment was properly recorded in the official records of Baylor County.[1]

Records filed with the Texas Railroad Commission show that 7N Oil & Gas is the operator of the Wirz Lease, but the records incorrectly show Seven Holdings' address rather than the correct address of 7N Oil & Gas. 7N Oil & Gas is in Houston, and Seven Holdings operates in Aubrey. The general partner for both Seven Holdings and 7N Oil & Gas is Jabela Holdings, L.L.C. (Jabela). Laurie D. Nickell is Jabela's general partner, and she is also the registered agent for Seven Holdings. Jerry D. Nickell, Laurie Nickell's husband, serves as the registered agent for 7N Oil & Gas.

Jerry Nickell hired contract pumper Donnie Harrington to perform work on the Wirz Lease. At Harrington's request, Mathis & Sons provided oilfield and fluid disposal services on the Wirz Lease from October 28, 2008, to March 6, 2009. Mathis & Sons also rented and delivered a frac tank to the Wirz Lease. Harrington told Terry Mathis, the president of Mathis & Sons, to send the invoices for the provided services to 7N Oil & Gas.

Subsequently, Mathis & Sons sent twenty-two invoices for services performed on the Wirz Lease to Seven Holdings' address in Aubrey. Unsure of the proper party to bill, Mathis & Sons addressed these invoices using a variety of

---

[1]After the assignment, Seven Holdings retained an overriding royalty interest in the Wirz lease.

names, including "7N Holdings, L.P.," "7N Oil and Gas," and "7N Holding Company." 7N Oil & Gas initially paid two of the invoices, but the other twenty invoices went unpaid.

Mathis finally checked the Baylor County records in an effort to find out who was the proper party upon which to make demand for the unpaid balance. Mathis discovered the original Wirz Lease but failed to find the subsequent assignment to 7N Oil & Gas. Based on the information contained in the original Wirz Lease agreement, Mathis & Sons made demand on Seven Holdings for the balance of the unpaid invoices.

Mathis contacted Jerry Nickell several times about the unpaid invoices, but Jerry refused to pay them and also failed to give an explanation for not paying them. Mathis & Sons then filed a lien on the Wirz Lease under Chapter 56 of the Texas Property Code.[2] Mathis also removed the rented frac tank from the Wirz lease. In order to remove the tank, Mathis emptied the contents of the tank into the casing of the Wirz lease well.

Mathis & Sons then brought a Chapter 53[3] foreclosure and enforcement suit against Seven Holdings. After Seven Holdings responded with a verified denial that indicated that 7N Oil & Gas was the proper party to the litigation, Mathis & Sons amended its claim to include 7N Oil & Gas as an additional defendant. Almost two years after Mathis & Sons first demanded payment, 7N Oil & Gas sent Mathis & Sons a cashier's check for the balance of the unpaid invoices. Because the check did not include additional compensation for interest and attorney's fees, Mathis & Sons refused to accept it.

Mathis testified that his decision to pump the contents of the frac tank back down the Wirz Lease well, to retrieve the rented frac tank, represented standard

---

[2]TEX. PROP. CODE ANN. ch. 56 (West 2007).

[3]TEX. PROP. CODE ANN. ch. 53 (West 2007 & Supp. 2013).

3

practice in the industry. Mathis stated that his actions should have damaged no oil and should not have prevented later retrieval of the oil. Royce Dean Walker, an expert witness for Mathis, also testified that Mathis's decision to pump the fluid back down the well should not have affected the value of any oil in the well and should not have prevented its recovery.

In his testimony, Harrington described the fluid in the rented frac tank as "slop" and compared it to "gun grease." Jerry Nickell disputed Harrington's assessment of the oil and testified that the tank contained 242 barrels of good quality oil, valued at $72 a barrel. Jerry referred to Mathis's decision to pump the oil back down the well as "unheard of," and he also testified that, as a result of Mathis's actions, he was unable to recover the oil that Mathis had pumped back down the well. Jerry claimed the lost oil "had a market value of" $17,000, which represented his damages.

The trial court maintained the Chapter 56 lien against Seven Holdings and ordered Seven Holdings and 7N Oil & Gas to pay Mathis & Sons $16,000 for attorney's fees and costs. In its findings of fact, the trial court stated that Mathis's decision to remove the rented frac tank and discharge its contents into the Wirz Lease well did not result in damages because the contents were of no or nominal value.

## II. *Issues Presented*

Seven Holdings and 7N Oil & Gas present the following issues (as paraphrased by this court):

(1)  Did the trial court err when it held Seven Holdings and 7N Oil & Gas jointly and severally liable for Mathis & Sons' attorney's fees and costs?

(2)  Did the trial court err when it awarded attorney's fees and costs to Mathis & Sons?

4

(3)     Did the trial court err when it maintained a Chapter 56 lien against Seven Holdings?

(4)     Did the trial court err when it found that Mathis & Sons' decision to pump the contents of the rented frac tank back down the well did not result in damages because the contents were of no or nominal value?

(5)     Did the trial court err when it refused to make additional findings of fact and conclusions of law as requested by Seven Holdings and 7N Oil & Gas?

III. *Standard of Review*

On appeal, a trial court's findings of fact have the same force and effect as a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). As the factfinder, the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Nat'l Freight, Inc. v. Snyder*, 191 S.W.3d 416, 425 (Tex. App.—Eastland 2006, no pet.). A trial court's findings of fact are reviewable for legal and factual sufficiency. *Anderson*, 806 S.W.2d at 794. Sufficiency challenges to a trial court's findings of fact are reviewed under the same standards used to review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

To analyze a legal sufficiency challenge, we must determine whether the evidence would enable reasonable and fair-minded people to reach the verdict under review. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We review the evidence in the light most favorable to the challenged finding. *Id.* at 821–22. We give credit to favorable evidence if a reasonable factfinder could do so, and we disregard contrary evidence unless a reasonable factfinder could not do so. *Id.* at 827.

We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of a vital fact; (2) the court is barred by rules of law

5

or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the only evidence offered to prove a vital fact is only a mere scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)).

To analyze a factual sufficiency challenge, we must consider and weigh all the evidence and may set aside a verdict only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). We review a trial court's conclusions of law, including those mislabeled as findings of fact, de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).

## IV. *Analysis*

### A. *Joint and Several Liability*

Seven Holdings and 7N Oil & Gas argue that Seven Holdings cannot be held liable for the debts of 7N Oil & Gas because there was no evidence to suggest that the two distinct partnerships acted or operated as one. Mathis & Sons contends that the evidence at trial of the long history of muddled transactions between Seven Holdings and 7N Oil & Gas sufficiently supported their joint and several liability.

Apparent authority is based upon the doctrine of estoppel and is created when the principal's conduct would lead a reasonably prudent person to believe that the agent has the authority he purports to exercise. *Biggs v. U.S. Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex. 1981). An agent who acts within the scope of his apparent authority binds the principal as if the principal itself had taken the action. *Id.* Apparent authority is established when a principal knowingly permits an agent to hold himself out as having authority or when a principal acts with a lack of such

6

ordinary care as to clothe an agent with the indicia of authority. *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984).

A party who seeks to recover under an apparent authority theory must show justifiable reliance on the principal's words or conduct that resulted in harm to the party. *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 & n.2 (Tex. 1998). The party must also show that the principal had full knowledge of all essential facts at the time of the conduct alleged to be the basis of the apparent authority. *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007). To determine if apparent authority existed, we examine the conduct of the principal and the reasonableness of the third party's assumptions in relation to the assumed authority. *Id.* at 183.

In this case, the trial court did not err when it held the two partnerships jointly and severally liable because there was sufficient evidence at trial to support that determination. Mathis testified that Jerry Nickell did not explain his refusal to pay before trial and did not claim that Mathis & Sons had billed the wrong partnership until after Mathis & Sons filed suit. Although 7N Oil & Gas now claims that it failed to pay because Mathis & Sons billed the wrong partnership, 7N Oil & Gas initially paid two of the invoices without any objection, explanation, or request that Mathis & Sons change the billing.

Harrington and Mathis testified that they could not identify which partnership they were employed by because Jerry Nickell operated the Wirz Lease either personally or as an agent of both partnerships. Harrington and Mathis's testimony was supported by documents submitted into evidence that showed that Jerry used the two partnership names and addresses interchangeably in Railroad Commission filings. These disputed facts were resolved by the trier of fact, and we defer to its factual resolution. The first issue on appeal is overruled.

7

*B. Attorney's Fees*

Seven Holdings and 7N Oil & Gas also contend that, because Mathis & Sons did not prevail in its suit and never requested payment from 7N Oil & Gas, the trial court improperly awarded Mathis & Sons attorney's fees and costs. Mathis & Sons claims that it made proper presentment to both partnerships and was entitled to collect attorney's fees as the prevailing party.

A party who sues to foreclose a lien against mineral property may properly be awarded attorney's fees under the Texas Property Code. Section 56.041 of the Texas Property Code allows the holder of a mineral lien to enforce it as a Chapter 53 mechanic's lien. Section 53.156 of the Texas Property Code provides that a plaintiff who sues to foreclose a lien may recover an award for costs and attorney's fees, so long as the award is equitable and just.

Additionally, Section 38.001(1) and (2) of the Texas Civil Practice and Remedies Code provides for the recovery of reasonable attorney's fees associated with a successful claim for services rendered or labor performed. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(1), (2) (West 2008). To recover attorney's fees under this chapter, the claimant must (1) prevail on a cause of action for which attorney's fees are recoverable and (2) recover damages. *Green Int'l v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). The Texas Supreme Court has established that a party satisfies this test when the court awards the party "something, either monetary or equitable." *Intercont'l Grp. P'ship v. KB Home Lone Star L.P.,* 295 S.W.3d 650, 655 (Tex. 2009).

To recover attorney's fees under Chapter 38, the claimant must also present the claim to the opposing party or its authorized agent. CIV. PRAC. § 38.002(2). A party must present its claim at least thirty days before trial in order to provide the defendant with an opportunity to pay the claim without incurring attorney's fees. *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981). The statute requires no

particular form of presentment; presentment may be accomplished either orally or in writing. *Id.*

An award for attorney's fees rests in the sound discretion of the trial court and will not be reversed absent a clear showing of abuse of discretion. *Oake v. Collin Cnty.*, 692 S.W.2d 454, 455 (Tex. 1985). We find no such abuse of discretion in the attorney's fees award in this case. Because Mathis & Sons sued to foreclose a mineral lien, the trial court could clearly award attorney's fees under Sections 53.156 and 56.041 of the Texas Property Code.

Alternatively, Mathis & Sons was entitled to recover attorney's fees under Section 38.001(1) and (2) of the Texas Civil Practice and Remedies Code. Mathis & Sons received equitable relief from the trial court through the court's judgment that ordered the lien against Seven Holdings to remain in place. This equitable relief established Mathis & Sons as a prevailing party and authorized the award of attorney's fees. Mathis & Sons made proper presentment on both partnerships through numerous collection attempts aimed at Jerry Nickell, Seven Holdings, and 7N Oil & Gas.

7N Oil & Gas's attempt to tender payment after Mathis & Sons sued did not affect the trial court's ability to award attorney's fees. The payment was refused by Mathis & Sons because it did not contain an additional amount for interest and attorney's fees. The trial court did not err when it awarded Mathis & Sons attorney's fees. The second issue on appeal is overruled.

*C. Chapter 56 Lien*

Seven Holdings and 7N Oil & Gas further claim that, because the judgment does not conform to the original pleadings, the trial court erred when it maintained the Chapter 56 lien on the Wirz Lease. The partnerships also argue the lien was improper due to Mathis & Sons' failure to comply with Section 56.022 of the Texas Property Code. Mathis & Sons contends that the standard for a mineral lien

9

affidavit is substantial compliance, rather than strict compliance, and it argues that it substantially complied with the statute.

Rule 301 of the Texas Rules of Civil Procedure mandates that a trial court's judgment conform to the pleadings of the case. TEX. R. CIV. P. 301. A party cannot recover through a right not asserted. *Starr v. Ferguson*, 166 S.W.2d 130, 132 (Tex. 1942). Facts not alleged, though proved, cannot support judicial action. *Id.*

Texas applies a "substantial compliance" rule to mineral lien affidavits. *Texcalco, Inc. v. McMillan*, 524 S.W.2d 405, 407 (Tex. Civ. App.—Eastland 1975, no writ). Section 56.022(a) of the Texas Property Code provides that an affidavit for a lien against mineral property must include the name of the mineral property owner only if known. A "mineral contractor"[4] is not required to give notice to the mineral property owner to secure a Chapter 56 lien. PROP. §§ 56.021(a), 56.022(a). "Had the legislature intended for all mineral property owners of record to be notified by a 'mineral contractor' in order to secure the lien, then it would have so provided. Chapter 56 should be liberally construed for the protection of laborers and materialmen." *Bandera Drilling Co. v. Lavino*, 824 S.W.2d 782, 785 (Tex. Civ. App.—Eastland 1992, no writ).

In its original petition, Mathis & Sons sought foreclosure of its Chapter 56 lien against Seven Holdings and pleaded facts to support its claim. Mathis testified extensively about the events that led up to Mathis & Sons' decision to file the Chapter 56 lien. Given these facts, the trial court had authority to maintain the lien against Seven Holdings.

---

[4]Section 56.001(2) of the Texas Property Code defines a "mineral contractor" as a person who performs labor or furnishes or hauls material, machinery, or supplies used in mineral activities under an express or implied contract with a mineral property owner or with a trustee, agent, or receiver of a mineral property owner.

10

Mathis & Sons substantially complied with Section 56.022(a) of the Texas Property Code. Mathis & Sons filed a lien against Seven Holdings because it believed the partnership to be the owner of the mineral property. Although the partnership with an ownership interest in the property is 7N Oil & Gas, under Section 56.022(a) of the Texas Property Code and the applicable substantial compliance standard, Mathis & Sons' error did not affect the status of the mineral property lien. *See* PROP. § 56.022(a); *Texcalco*, 524 S.W.2d at 407.

The trial court did not err when it maintained the lien against Seven Holdings. The judgment properly conformed to the original petition, and the lien affidavit substantially complied with the statute. 7N Oil & Gas's attempt to tender payment on February 7, 2011, did not affect the lien because Mathis & Sons rightfully refused the tender. *See Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex. 1969) (parties must mutually agree that a payment will amount to full satisfaction of the existing claim, and a court is not required to release a lien where the evidence showed unpaid indebtedness). The third issue on appeal is overruled.

### D. Market Value

Seven Holdings and 7N Oil & Gas additionally argue that the trial court erred when it concluded that the contents of the rented frac tank had no or nominal value. The partnerships claim that Jerry Nickell, the only expert witness allowed to testify on oil quality and market value, established the market value of the oil taken from the tank at $72 dollars per barrel and that no expert testimony supported the trial court's finding the oil had no or nominal value. Mathis & Sons contends that the lay witness testimony of Mathis and of Harrington was admissible as to the physical characteristics of the contents of the tank and that the testimony was properly considered by the trial court when it determined the value of the contents of the tank.

The trial court has sound discretion in ruling on evidentiary matters. *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007). A trial court abuses this discretion when it acts without regard for guiding rules or principles. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). Even when a trial court abuses its discretion, reversal is only appropriate if the error was harmful and probably resulted in an improper judgment. *See Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004); TEX. R. APP. P. 44.1.

Market value is defined as the price property would bring when offered for sale by someone who desires, but is not obligated, to sell and is bought by someone who is not required to buy. *Exxon Corp. v. Middleton*, 613 S.W.2d 240, 246 (Tex. 1981). The complexity of the oil and gas industry has made it difficult to establish a precise formula to determine the market value of oil and gas. *Id.* It is proper, but unnecessary, for the trial court to consider an expert's testimony on market value. *Id.* at 247. Objections to the basis of such testimony go to its weight, not its admissibility. *Id.* at 249.

Jerry Nickell was the only witness designated as an expert on oil quality and market value. Jerry testified he performed a color cut gauge of the tank that showed that the tank contained 200 barrels of oil, and he claimed that Mathis later informed him that the tank gauged 242 barrels of oil. Jerry stated that he determined that the market value of the oil in the tank was $72 a barrel based on the results of the specific gravity and sulfur tests he performed.

Harrington compared the oil in the tank to "gun grease" and referred to it as "slop." Mathis stated that any oil in the tank was mixed with a much larger amount of saltwater and paraffin. Although Harrington and Mathis testified as lay witnesses, their testimony was admissible to establish the physical characteristics of the contents of the frac tank. *See* TEX. R. EVID. 701.

The trial court was within its discretion when it found that the contents of the frac tank were of no or nominal value. Though Jerry may have been the only expert designated to speak to the market value of oil, as an interested witness, his testimony only raised a fact issue for the trial court. *Cochran v. Wool Growers Cent. Storage Co.*, 166 S.W.2d 904, 908 (Tex. 1942). The trial court could disbelieve Jerry's testimony and base its finding on other evidence at trial. The fourth issue on appeal is overruled.

*E. Additional Findings of Fact and Conclusions of Law*

Seven Holdings and 7N Oil & Gas contend that the trial court erred when it refused to make the additional findings of fact and conclusions of law that they requested. Although the partnerships make this contention within another issue on appeal, we address it separately based on its applicability to several of the issues presented on appeal.

Upon a party's timely request for additional findings of fact and conclusions of law, the trial court shall file any additional or amended findings of fact and conclusions of law that are appropriate. TEX. R. CIV. P. 298. Additional findings of fact and conclusions of law are not required if the original findings of fact and conclusions of law adequately relate the facts and law necessary to present the party's appeal. *Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ). A trial court's failure to make additional findings of fact and conclusions of law will not be reversed unless the record affirmatively shows that the complaining party has suffered an injury. *Cherne Indus., Inc. v. Magallanes*, 763 S.W.2d 768, 772 (Tex. 1989). If the refusal to file additional findings of fact and conclusions of law does not prevent a party from adequately presenting an argument on appeal, there is no reversible error. *ASAI v. Vanco Insulation Abatement, Inc.*, 932 S.W.2d 118, 122 (Tex. App.—El Paso 1996, no writ).

13

In this case, the trial court could have rightfully refused to supplement the original findings of fact and conclusions of law with those requested by Seven Holdings and 7N Oil & Gas. Seven Holdings and 7N Oil & Gas suffered no injury as a result of the refusal. The trial court's refusal to file additional findings of fact and conclusions of law did not prevent Seven Holdings and 7N Oil & Gas from presenting their arguments on appeal. The trial court did not err when it refused to make additional findings of fact and conclusions of law. The fifth issue on appeal is overruled.

## V. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

January 24, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

14