COURT
OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO.
2-01-290-CV
 
CITY OF ROANOKE                                                        
   APPELLANT
V.
TOWN OF WESTLAKE                                                       
 APPELLEE
------------
FROM THE 367TH DISTRICT COURT OF DENTON COUNTY
------------
OPINION
------------
I. INTRODUCTION
       
The City of Roanoke ("Roanoke") appeals from a summary judgment in
favor of the Town of Westlake ("Westlake") declaring annexation of
certain tracts of land by Westlake to be valid. Roanoke raises three issues,
contending the trial court erred by declaring, in granting Westlake's summary
judgment, that Westlake's annexations in 1985 and 1995 were valid and that a
Rule 11 settlement agreement purporting to disannex the tracts and apportion
them between the cities was unenforceable as a contract. Roanoke also appeals
the denial of its cross-motion for summary judgment seeking a declaratory
judgment that Westlake's purported annexation of land in 1995 was void, as a
matter of law. We affirm in part, reverse and render in part, and remand in
part.
II. BACKGROUND FACTS
       
A.  The Annexation Ordinances
       
Westlake is a general law municipality located in Tarrant and Denton Counties.
Roanoke is a general law municipality located in Denton County. Both
municipalities had fewer than 5,000 inhabitants at all relevant times, and both
operate under the "aldermanic" form of government.(1)
Three tracts of land are in question, located between Roanoke and Westlake and
claimed to be within the extraterritorial jurisdiction ("ETJ") of both
municipalities.(2)
       
On April 8, 1985, Westlake passed Ordinance No. 138, annexing a tract consisting
of 29.112 acres of land. On the same date, by Ordinance No. 139, Westlake
annexed a second tract containing 382.76 acres.(3) 
On April 16, 1985, Roanoke passed an ordinance attempting to annex a portion of
the same property previously annexed by Westlake into its own boundaries. 
On September 17, 1985, Roanoke passed another ordinance purporting to annex
additional portions of the property previously annexed by Westlake.  On
March 6, 1995, Westlake enacted Ordinance No. 236, annexing the third tract in
issue, comprising approximately 58.96 acres.
       
B. Attempted Disannexation and Settlement
       
Scott Bradley was elected mayor of Westlake in May 1994, and was re-elected in
1996. An election was scheduled in Westlake for May 3, 1997, for three seats on
the Westlake Board of Aldermen. On April 14, 1997, one of the existing members
of the Board of Aldermen filed charges of misconduct and incompetency against
Bradley.  On April 29,1997, that Alderman and three other members of the
Board of Aldermen of Westlake (referred to by Westlake as the "disannexing
Aldermen") sat as a court to hear the charges against Bradley and voted to
remove him from office as mayor.  On the same date, Carol Huntress, one of
the disannexing Aldermen who was also mayor pro-tem of Westlake, posted a Notice
of Special Meeting to be held May 2, 1997, in order to fill the vacancy in the
office of mayor, to disannex the properties in issue and other properties from
Westlake, and to "release" those properties to Roanoke and other
neighboring cities.
       
On May 1, 1997, Bradley posted a notice on the front door of the Town Hall that
the special meeting was illegally called by Huntress and was cancelled. In the
face of this action by Bradley, the disannexing Aldermen met on May 2, 1997,
purported to install Dale White as mayor, attempted to delay installation of
newly elected board members, and purported to pass ordinances and resolutions
disannexing the tracts in question and releasing Westlake's ETJ over the tracts.
       
On May 3, 1997, the Westlake elections were held, with the result that new
Aldermen were elected and two of the disannexing Aldermen were no longer on the
board. On May 5, 1997, Bradley canvassed the results of the election and swore
in the new Aldermen. By letter of May 5, 1997, Bradley vetoed the actions taken
by the disannexing Aldermen, put Roanoke on notice that the attempts to disannex
the property in issue were illegal, and demanded that Roanoke cease any attempt
to take jurisdiction over the property.(4) 
Once seated, the new Board voted unanimously to repeal the disannexation
ordinances and resolutions.
III. PROCEDURAL HISTORY
       
A.  Filing of this Suit
       
Roanoke filed this suit against Westlake in the 367th District Court
of Denton County, Texas, on February 28, 1997.  By its suit, Roanoke sought
to have the 1995 Westlake Ordinance No. 236, annexing the 58.96 acre tract,
declared void.(5)  Roanoke alleged that the
tract was within the overlapping ETJs of Roanoke and Westlake, and that Westlake
had failed to obtain statutorily required written consent of Roanoke for
annexation of that property, rendering the attempted annexation void. Roanoke
further sought to have the land apportioned between the two cities.
       
B. The Rule 11 Settlement Agreement
       
At the meeting on May 2, 1997, in addition to purporting to disannex the tracts
in question, along with other properties from Westlake, and to release
Westlake's ETJ over those tracts to Roanoke and other neighboring cities, the
disannexing Westlake Aldermen also voted to settle this suit and purported to
authorize attorney R. William Wood, a new attorney of record for Westlake who
was substituted for Westlake's original attorney in the case to enter into a
settlement agreement on behalf of Westlake with Roanoke.  Wood entered into
a written settlement agreement with counsel for Roanoke on the same date,
pursuant to which the 1995 Westlake Ordinance Nos. 236, 237, and 253, as well as
the 1985 Westlake Ordinance Nos. 138 and 139, would be declared void and the
portions of those lands lying north of State Highway 170 would be apportioned to
Roanoke.
       
On May 9, 1997, Roanoke amended its petition to include a request for
declaratory relief that Westlake's 1985 Ordinance Nos. 138 and 139, annexing the
29.112 acre and the 38.76 acre tracts, as well as the 1995 Ordinance annexing
the 58.96 acre tract, were void, and sought apportionment of the properties
between the two cities.  On the same date, Roanoke filed its Motion to
Enter Judgment based on the Rule 11 settlement agreement. Wood, as attorney for
Westlake, likewise filed a motion to enter judgment on the Rule 11 agreement.

 C.The Agreed Judgment

      
On May 12, 1997, during the hearing on the motions to enter judgment, Westlake
had its original counsel substituted back into the suit for Wood as its attorney
of record, and withdrew its consent to the Rule 11 agreement.  The trial
court rendered judgment on the Rule 11 agreement, but subsequently granted
Westlake's motion to set aside the judgment and for new trial.(6)
       
Westlake thereafter filed an amended answer and counterclaim for injunctive and
declaratory relief, asserting that the ordinances disannexing the properties and
releasing Westlake's ETJ over them to Roanoke were illegal and unauthorized, and
that each of the properties was validly annexed and remained part of the
incorporated limits of Westlake.
       
D. The Summary Judgments
       
Roanoke filed a motion for summary judgment on its claim that Westlake's
annexation of the 58.96 acre tract was void and for enforcement of the Rule 11
agreement as to all three properties.  Westlake filed a motion for summary
judgment, asserting that the property, some of which was purportedly annexed by
Roanoke in 1985, was within the corporate limits of Westlake.  Westlake's
motion further sought relief declaring Roanoke's attempted annexation of that
property into Roanoke's ETJ to be void and that the Rule 11 agreement was
unenforceable.  Pre-trial matters in this and related cases involving other
surrounding municipalities, growing out of the actions of the disannexing
Aldermen, were assigned to the 17th District Court of Tarrant County,
Texas by the Administrative Judge of the 8th Administrative Judicial
Region.
       
In the meantime, the State of Texas on relation of Dale White, filed a quo
warranto proceeding in Tarrant County, seeking a declaration that White,
not Bradley, was the lawful mayor of Westlake.  In April of 1999, the
Supreme Court of Texas held in that case that the removal of Bradley as mayor by
the Westlake Board of Aldermen was void, and declared that Bradley remained the
lawful mayor of Westlake at all times from the date of his attempted removal. 
Bradley v. State of Texas ex rel. White, 990 S.W.2d 245, 249 (Tex.
1999).
       
Westlake then filed its first amended motion for partial summary judgment in
this suit. Westlake argued that its 1985 and 1995 annexations of the tracts were
valid; that Roanoke's later attempted annexations of the tracts were invalid;
that the actions of the disannexing Aldermen were void because those actions
lacked mayoral consent and were taken at illegally held meetings; and that
Westlake's annexation ordinances were valid.  Roanoke thereafter filed a
first amended motion for partial summary judgment, asserting that it was
entitled to judgment as a matter of law that the purported annexation of the
58.96 acre tract by Westlake in 1995 was within the Roanoke ETJ and was void. 
Roanoke also responded to Westlake's first amended motion, contending that
issues of fact were raised as to the validity of Ordinance Nos. 138 and 139 and
as to the enforceability of the Rule 11 agreement.
       
The trial court granted Westlake's first amended motion and denied Roanoke's
first amended motion. The judgment declared that the purported disannexation and
release of Westlake's ETJ over the property described in the ordinances passed
by the disannexing Aldermen were void, that Westlake Ordinance Nos. 138, 139,
236, 237, and 253 were valid, and that the tracts in question remained in
Westlake's corporate limits.  Westlake non-suited its remaining claims,
resulting in a final judgment from which Roanoke has appealed.
IV. ISSUES
       
Roanoke complains of the summary judgment in favor of Westlake by three issues,
contending that the trial court erred in ruling: (1) that the two 1985
annexations by Westlake were valid; (2) that Westlake's annexation of the 58.96
acre tract in 1995 was valid; and (3) that the Rule 11 agreement was
unenforceable as a contract.  By its fourth issue, Roanoke complains of the
denial of its own first amended motion for partial summary judgment that the
1995 annexation was void as a matter of law.(7)
V. STANDARD OF REVIEW
       
We review a summary judgment de novo.  Natividad v. Alexsis, 875
S.W.2d 695, 699 (Tex. 1994). A motion for summary judgment must expressly
present the grounds upon which it is made, and it must stand or fall upon those
grounds.  Tex. R. Civ.
P. 166a(c); Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex.
1997); McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341
(Tex. 1983).  Issues not expressly presented by the written motion or
response cannot be considered by the appellate court as grounds for reversal. Tex.
R. Civ. P. 166a(c); Johnson v.
Brewer & Pritchard, P.C., 73 S.W.3d 193, 204 (Tex. 2002); McConnell,
858 S.W.2d at 229.
       
The issue on appeal is whether the movant has established that no genuine issue
of material fact exists and that he is entitled to judgment as a matter of law. 
KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746,
748 (Tex. 1999); City of Houston v. Clear Creek Basin Auth., 689 S.W.2d
746, 748 (Tex. 1979).  The burden of proof is on the movant, and all doubts
as to the existence of a genuine issue of material fact are resolved against the
movant.  Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex.
1999); Friendswood Dev. Co. v. McDade + Co., 926 S.W.2d 280, 282 (Tex.
1996)(8)
       
When both parties move for summary judgment and the trial court grants one
motion and denies the other, the reviewing court should review both parties'
summary judgment evidence and determine all questions presented.  Dow
Chem. Corp. v. Bright, 89 S.W.3d 602, 605 (Tex. 2002).  The reviewing
court should render the judgment that the trial court should have rendered. 
Id.
VI. APPLICATION OF LAW TO
FACTS
       
A. Enforceability of The Rule 11 Agreement

 
 1. The Summary Judgment
 Evidence
 

       
We first address Roanoke's third issue, complaining that the trial court erred
in ruling that the May 1997 Rule 11 agreement between Roanoke and Westlake was
not enforceable as a contract between the parties.  If Roanoke's position
on this issue is correct, the Rule 11 agreement is dispositive of the other
issues.
       
Westlake's first amended motion for summary judgment asserted that the Rule 11
agreement was unenforceable because its then attorney of record, R. William
Wood, was not authorized to enter into the agreement on behalf of Westlake. 
In support of this ground, Westlake filed affidavits of Mayor Scott Bradley and
the Town Secretary, together with certified copies of all relevant notices,
ordinances, and resolutions referenced in the affidavits.
       
The summary judgment evidence details the actions of the disannexing Aldermen in
April and May of 1997. Bradley's affidavit describes the filing of the complaint
attempting to remove Bradley from office, the trial resulting in Bradley's
purported removal, which was subsequently declared void ab initio by
the supreme court, the calling of the special meeting for May 2, 1997 by
Huntress, Bradley's posting of notice of cancellation of that meeting as
illegally called, and the holding of that meeting notwithstanding its
cancellation, at which those Aldermen purportedly authorized Wood, as attorney
of record for Westlake, to settle this suit.
       
The Rule 11 agreement is in the form of a letter addressed to Wood from
Roanoke's attorney, Michael McEntire, dated May 2, 1997, offering to settle this
suit on the following terms:

 
 Westlake Ordinances 138, 139, 236,
 237, and 253 shall be declared void.
 
 
 The parcel of land described in
 Westlake Ordinance 138 will be judicially apportioned to Roanoke and be
 within the sole extra-territorial jurisdiction of Roanoke.
 
 
 The portion of the parcel of land
 described in Westlake Ordinance 139 which lies north of the right-of-way
 of State Highway 170 will be judicially apportioned to Roanoke and be
 within the sole extra-territorial jurisdiction of Roanoke.
 
 
 Roanoke relinquishes all claims to
 the portion of the parcel of land described in Westlake Ordinance No. 139
 which lies south of the north right-of-way line of State Highway 170.
 
 
 The portion of the parcel of land
 described in Westlake Ordinance 236 which lies north or west of the
 right-of-way line of State Highway170 will be judicially apportioned to
 Roanoke and be within the sole extra-territorial jurisdiction of Roanoke.
 
 
 Roanoke relinquishes all claims to
 the portion of the parcel of land described in Westlake Ordinance No. 236
 which lies south or east of the right-of-way line of State Highway 170.
 
 
 The property description and exhibits
 attached hereto will be part of this agreement.
 
 
 Roanoke will waive any claims for
 attorneys fees and costs against Westlake.
 
 

        If this
offer is acceptable to your client, please sign the same and either file it with
the Court or return it to me and I will file it.

        
 This letter and its attachments will be binding and enforceable pursuant to
 Tex. R. Civ. P. Rule 11, and the only remaining act of the parties will be to
 ministerially prepare a judgment drafted in accordance with its terms and
 present the same to the District Court for signature.
 

       
The letter was signed by McEntire, and contained a signature line on which Wood
signed as "Accepted" as attorney for Westlake. Roanoke has never
contended that Wood had actual authority to settle this suit on behalf of
Westlake.  Roanoke makes no contention that the May 2, 1997 meeting called
by Huntress was a legally called meeting or that the disannexing Aldermen were
actually empowered to act for Westlake in authorizing Wood to settle this suit. 
Roanoke urges only that Wood possessed "apparent" authority to enter
into the settlement and Rule 11 agreement.
       
Roanoke's summary judgment evidence consisted of the affidavit of its attorney
attached to Roanoke's response in the trial court.  McEntire averred that
he attended the May 2, 1997 meeting of the Aldermen called by Carol Huntress,
who he knew to be mayor pro-tem of Westlake, and that during the meeting, the
Board voted to settle the lawsuit and further voted to include Ordinances 138
and 139 in the overall settlement, even though those ordinances were not at
issue in the suit at that time.
       
According to McEntire's affidavit, he proposed the settlement agreement to Wood
on May 2, 1997.  He stated he presumed Wood was authorized to settle this
case because Wood, as attorney of record for Westlake in this suit, was presumed
to have authority to settle.  Additionally, based on the actions of the
members of the disannexing Aldermen at the May 2, 1997 meeting, McEntire stated
that he believed Wood was clothed with apparent authority and believed that
Roanoke acted reasonably in believing Wood had authority to accept the
settlement offer on behalf of Westlake.

 
 2. Rule 11 Requirements
 

       
As this court has noted, settlement agreements are governed by contract law. 
Alcantar v. Okla. Nat'l Bank, 47 S.W.3d 815, 819 (Tex. App.--Fort Worth
2001, no pet.); Cothron Aviation, Inc. v. Avco Corp., 843 S.W.2d 260,
263 (Tex. App.--Fort Worth 1992, writ denied).  Rule 11 of the Texas Rules
of Civil Procedure provides, however, that "[u]nless otherwise provided in
these rules, no agreement between the attorneys or parties touching any suit
pending will be enforced unless it is in writing, signed and filed with the
papers as part of the record, or unless it be made in open court and entered of
record."  Tex. R. Civ.
P. 11.
       
The supreme court has superimposed the requirements of Rule 11 on all settlement
agreements in pending suits.  Padilla v. LaFrance, 907 S.W.2d 454,
460 (Tex. 1995); Kennedy v. Hyde, 682 S.W.2d 525, 528 (Tex. 1984)
(holding Rule 11 sets forth the "minimum requirement for enforcement of all
[settlement] agreements [in] pending suits, including but not limited to, agreed
judgments").  Roanoke does not contest the trial court's previous
order vacating the agreed judgment in this case based on lack of consent by
Westlake to the Rule 11 agreement.  What Roanoke contests is the subsequent
refusal of the court to enforce the Rule 11 agreement as a contract.
       
Although a court may not render an agreed judgment absent consent at the time it
is rendered, the court may nevertheless enforce a settlement agreement that
complies with Rule 11 as a contract, even after one party has withdrawn its
consent.  Padilla, 907 S.W.2d at 460 (holding trial court erred in
refusing to enforce settlement agreement that complied with Rule 11 although one
party had withdrawn consent); see also Burnaman v. Heaton, 150 Tex.
333, 338, 240 S.W.2d 288, 291 (1951) (reversing consent judgment where plaintiff
contended her attorney lacked authority to agree to settlement before judgment
rendered, but without prejudice to defendants' right to plead and prove
agreement as contract); Quintero v. Jim Walter Homes, Inc., 654 S.W.2d
442, 444 (Tex. 1983) (reversing consent judgment without prejudice to rights of
party to plead and prove an enforceable settlement agreement).
       
The agreement in question was in writing, signed by McEntire, as attorney for
Roanoke, and by Wood, as attorney of record for Westlake.  See W. Beach
Marina, Ltd. v. Erdeljac, 94 S.W.3d 248, 255 (Tex. App.--Austin 2002, no
pet.) (holding settlement agreement satisfied Rule 11 where counsel for both
parties signed agreement and it was filed with court); Ebner v. First State
Bank of Smithville, 27 S.W.3d 287, 297 (Tex. App.--Austin 2000, pet.
denied) (noting Rule 11 agreement may be signed by party or party's attorney); but
see Alcantar, 47 S.W.3d at 821-22 (holding terms of oral settlement
agreement announced to judge by telephone and later incorporated in judgment not
in compliance with Rule 11).
       
The letter agreement was signed and filed by both counsel with the court as
attachments to both parties' motions to enter judgment (as the basis for the
agreed judgment signed on May 12, 1997, which was subsequently vacated by the
trial court).  The agreement thus satisfied both the writing and the filing
requirements for enforcement of a Rule 11 agreement.  See Padilla,
907 S.W.2d at 461.

 
 3.  Apparent Authority
 of Municipality's Attorney
 

       
There are two types of authority: actual and apparent.  W. Beach
Marina, Ltd., 94 S.W.3d at 256; Ebner, 27 S.W.3d at 300. 
Actual authority is authority that the principal intentionally conferred on the
agent or allowed the agent to believe was conferred. Ebner, 27 S.W.3d
at 300; Currey v. Lone Star Steel Co., 676 S.W.2d 205, 209-10 (Tex.
App.--Fort Worth 1984, no writ).  Apparent authority exists when the
principal leads a reasonable third party to believe that the agent has the
authority that he purports to exercise. Ebner, 27 S.W.3d at 300 (citing
Biggs v. United States Fire Ins. Co., 611 S.W.2d 624, 629 (Tex. 1981)). 
To establish apparent authority, the principal must make some manifestation to a
third party that it is conferring authority or, by its actions, shows such a
lack of ordinary care as to clothe the agent with indicia of authority.  Id.
at 300-01 (citing NationsBank, N.A. v. Dilling, 922 S.W.2d 950, 952-53
(Tex. 1996)); see also Ames v. Great S. Bank, 672 S.W.2d 447, 450 (Tex.
1984).
       
Neither party has cited, nor have we found, a Texas case specifically addressing
whether a municipality may be bound to a settlement agreement by an attorney
representing it in pending litigation, on the theory of apparent authority. 
Westlake cites cases from other jurisdictions holding agreements by attorneys on
behalf of governmental entities unenforceable absent actual authority granted by
statute or resolution of the governing board.  See Presnell v. Bd. of
County Road Comm'rs of County of Wayne, 306 N.W.2d 516, 520 (Mich. Ct. App.
1981) (holding attorney for board lacked authority absent statute or express
resolution of board to settle claim for damages); Dillon v. City of
Davenport, 366 N.W.2d 918, 923 (Iowa 1985) (holding actual authority by
attorney for city to settle claim for specific sum conferred by city council but
additional benefits were not).
       
Roanoke argues that those decisions do not support Westlake's position that
apparent authority cannot be conferred on an attorney representing a
municipality because neither case specifically addressed the issue of apparent
authority.  Those cases are instructive, however, particularly in light of
Texas cases holding that the doctrine of apparent authority does not apply to
municipalities, as discussed below.

 
 4.  Apparent Authority
 Inapplicable to City
 

       
Westlake contends, and we agree, that a party may not use the theory of apparent
authority to bind a municipality, absent estoppel.  Wilke v. City of
Ballinger, 31 S.W.2d 1102, 1103 (Tex. Civ. App.--Austin 1930, no writ); Orange
County v. Tex. N.O.R. Co., 35 Tex. Civ. App. 361, 362, 80 S.W. 670, 670
(1904, writ ref'd).  Wilke involved an action for specific
performance of a city's written contract to purchase Wilke's land.  31
S.W.2d at 1102.  Appraisers appointed by the parties failed to file a
written unanimous report, as required by the contract, fixing the price to be
paid for the land.  Id.  Wilke contended the mayor accepted a
verbal report on behalf of the city and thereby waived the requirement of a
written report.  Id.  The court held that the mayor had no
actual authority to waive the requirement because waiver of provisions of a
contract was not of an executive nature but of a contractual nature, and
"only officials authorized by law could bind the city in that regard."
Id. at 1102-03.
       
The court in Wilke further stated, "It is the settled law of this
state that an officer of a municipal corporation cannot bind his principal
except upon actual authority, absent any question of estoppel."  Id.
at 1103; see also Cleontes v. City of Laredo, 777 S.W.2d 187, 189 (Tex.
App.--San Antonio 1989, writ denied) (holding evidence of airport director's
apparent authority to abate rent due on leased property irrelevant where
ordinance necessary under city charter to authorize abatement was never passed);
Thermo Prods. Co. v. Chilton Indep. Sch. Dist., 647 S.W.2d 726, 732
(Tex. App.--Waco 1983, writ ref'd n.r.e.) (noting rule that public officers
cannot bind governing body beyond authority conferred on them, absent estoppel);
City of Houston v. Lakewood Estates, Inc., 429 S.W.2d 938, 941
(Tex. Civ. App.--Houston [1st Dist.] 1968, no writ); Hallman v.
City of Pampa, 147 S.W.2d 543, 546 (Tex. Civ. App.--Amarillo 1941, writ
ref'd) (holding express authorization required for officer or employee of city
to bind city in matters committed exclusively to governing body).
       
We agree with the Texas cases holding that the doctrine of apparent authority
does not apply to municipalities, and we hold that the doctrine likewise does
not apply to allow apparent authority of an attorney representing a municipality
in pending litigation to bind that municipality to a settlement.

 
 5.  Lack of Apparent
 Authority Established
 

       
Roanoke contends that the Texas cases holding that actual authority is required
for a public officer to bind a municipality to a settlement do not apply to this
case involving an attorney of record. In general, a party may clothe his
attorney with actual or apparent authority to reach and sign a settlement
agreement that is binding on the client.  W. Beach Marina, Ltd.,
94 S.W.3d at 256; Ebner, 27 S.W.2d at 300; Walden v. Sanger,
250 S.W.2d 312, 316 (Tex Civ. App.--Austin 1952, no writ).  Even if Roanoke
were correct that the doctrine of apparent authority extends to attorneys
representing municipalities, however, we hold that the summary judgment evidence
conclusively negated Roanoke's claim that Westlake somehow conferred apparent
authority on Wood, through the actions of the disannexing Aldermen, to enter
into the Rule 11 settlement agreement.
       
Roanoke contends that Westlake is relying solely upon the Bradley
decision for its position that Wood had no apparent authority to settle, and
that this fact is not material to the reasonable belief of Roanoke as to Wood's
authority in May of 1997.  See Bradley, 990 S.W.2d at
249.  Westlake proved through its summary judgment evidence, however, that
the May 2, 1997 meeting held by the disannexing Aldermen, purporting to
authorize Wood to enter into the settlement, was not a regularly scheduled
meeting, but was a "special meeting," as described in the notice
posted by Huntress on April 29, 1997, the same date that those Aldermen voted to
remove Bradley as mayor.  Bradley publicly posted a notice on May 1, 1997,
cancelling the meeting for May 2 as illegally called in violation of section
22.038 of the local government code.  It is undisputed that Mayor Bradley
did not call the meeting and did not consent to the meeting, nor was he
requested by any Aldermen to call the meeting.(9)
 Additionally, Bradley put Roanoke and other surrounding municipalities
having related interests on notice by letter dated May 5, 1997 that the
purported actions taken at the May 2, 1997 meeting by the disannexing Aldermen
were illegal and void.
       
The evidence is undisputed that Roanoke had notice when Wood signed the Rule 11
agreement, at some unknown time on or after May 2, 1997:  (a) that the
purported removal of Bradley as mayor was being challenged; (b) that Bradley was
continuing to act as mayor; (c) that Bradley did not consent to or call the
meeting, nor was he present; and (d) that Bradley had cancelled the meeting. 
Because McEntire attended the meeting, it is significant that McEntire's
affidavit does not address the notice that Bradley had posted on the front door
of the Town Hall the day before, declaring the meeting illegal.  Nor does
McEntire's affidavit address the written notice given to Roanoke by Bradley on
May 5, that the actions of the Aldermen at the May 2 meeting were illegal.
       
Based on the totality of the uncontroverted summary judgment evidence, we
conclude that Westlake conclusively disproved any actions based upon which
Roanoke could have formed a reasonable belief that Wood possessed authority to
enter into the Rule 11 settlement agreement on behalf of Westlake.

 
 6.  Presumption of
 Authority
 

       
Roanoke also argues that the apparent authority of Wood to enter into the
settlement agreement existed by virtue of the presumption of authority based
upon his status as attorney of record for Westlake at the time he signed the
agreement.  We agree that an attorney retained for litigation is presumed
to possess authority to enter into a settlement on behalf of a client.  Williams
v. Nolan, 58 Tex. 708, 713-14 (1883); Walden, 250 S.W.2d at 316; Dunlap
v. Villareal, 91 S.W.2d 1124, 1125 (Tex. Civ. App.--San Antonio 1936, no
writ).  This is a presumption of actual authority, however, and
may be rebutted by affirmative proof that the client did not authorize his
attorney to enter into the settlement.  Walden, 250 S.W.2d at 316;
Johnson v. Rancho Guadalupe, Inc., 789 S.W.2d 596, 598 (Tex.
App.--Texarkana 1990, writ denied) (op. on reh'g) (noting that there is no
implied authority for an attorney to release the very right or interest he is
employed to protect); Fail v. Lee, 535 S.W.2d 203, 207-08 (Tex. Civ.
App.--Fort Worth 1976, no writ) (affirming summary judgment enforcing settlement
agreement absent proof that defendant did not authorize his attorney to settle);
Infante v. Bridgestone/Firestone, Inc., 6 F. Supp. 2d 608, 610 (E.D.
Tex. 1998) (citing Amin v. Merit Sys. Prot. Bd., 951 F.2d 1247, 1254
(Fed. Cir. 1991), and holding client failed to carry burden to produce clear
evidence that she had withdrawn authority before attorneys announced settlement
in open court).
       
Roanoke cites no authority utilizing the presumption of authority of an attorney
of record to support a claim of apparent authority.  Moreover, based on the
evidence discussed above, Westlake rebutted the presumption by clear and
uncontradicted summary judgment evidence proving that its attorney of record was
never authorized by valid action of the governing body of Westlake to settle,
nor was he clothed with apparent authority.  We overrule Roanoke's third
issue.
       
B.    Validity of the 1985 Annexations
       
By its second issue, Roanoke asserts that the trial court erred in ruling that
Westlake Ordinance Nos. 138 and 139, annexing tracts of land in 1985, are valid. 
Roanoke argues that its summary judgment evidence raised fact issues as to the
validity of those ordinances by establishing that the tracts in question were
located within Roanoke's ETJ at the time the ordinances were passed and that the
annexations were without Roanoke's written consent.
       
Until 1963, conflicting claims of municipalities over annexation of land were
governed by scattered legislation, together with the judicially established
"first in time" rule, by which the entity taking the first step to
create or expand its boundaries obtained exclusive jurisdiction over an area
sought to be annexed.(10)  By the 1963
Municipal Annexation Act ("Act"), the legislature established a
comprehensive statutory scheme, based upon the concept of ETJs, to determine
whether a municipality may exercise jurisdiction over a particular area.(11) 
The Act was intended to resolve increasingly frequent conflicting claims between
cities, as Texas continued to grow, by structuring the expansion of cities and
protecting them from intrusion by their neighbors.  City of Waco v.
City of McGregor, 523 S.W.2d 649, 653 (Tex. 1975). The Act allows a
municipality a designated amount of adjacent and contiguous unincorporated area
as its ETJ, with the surrounding area comprising the ETJ to be determined by the
population of a municipality, ranging from one-half mile for municipalities with
fewer than 5,000 inhabitants to five miles for those with 100,000 or more
inhabitants.  Tex.
Loc. Gov't
Code Ann.
§ 42.021.
       
Since the Act created an entirely new scheme by the designation of ETJs, the
legislature provided a procedure for resolving issues regarding overlapping ETJs
existing at the time of the statute's enactment. Cities could apportion
overlapping ETJs by written agreement approved by ordinance or resolution or
could request apportionment by an action in district court. Id. §
42.901.(12)  The legislature also
established procedures to govern the reduction or expansion of ETJs.  With
some exceptions, a city may annex only territory that is within its ETJ, unless
it owns the area sought to be annexed.  Id. § 43.051. 
Additionally, a city's ETJ cannot be reduced without its written consent.  Id.
§ 42.023 (Vernon 1999) ("The [ETJ] of a municipality may not be reduced
unless the governing body of the municipality gives its written consent by
ordinance or resolution . . . .").
       
Both Westlake and Roanoke furnished summary judgment evidence that each of the
tracts in question have been located within their respective ETJs since the date
of the original enactment of the Act in 1963, and neither party disputes the
other's claim.  It is also undisputed that the lands in question have never
been apportioned by agreement or by any action brought in district court. 
We are therefore faced with conflicting claims of overlapping ETJs.  If
Westlake's ordinances annexing the tracts in question into its corporate
boundaries are upheld as valid, the result will be to reduce the ETJ of Roanoke. 
Roanoke thus relies upon the statutory requirement contained in local government
code section 42.023, requiring its written consent to reduce its ETJ, the effect
of which is that Westlake may not annex land that is also within Roanoke's ETJ
without Roanoke's written consent.  Id.; City of Murphy v.
City of Parker, 932 S.W.2d 479, 481 (Tex. 1996); City of Nassau Bay v.
City of Webster, 600 S.W.2d 905, 908 (Tex. Civ. App.--Houston [1st
Dist.]), writ ref'd n.r.e. per curiam, 608 S.W.2d 618 (Tex. 1980); City
of Duncanville v. City of Woodland Hills, 484 S.W.2d 111, 113 (Tex. Civ.
App.--Waco), writ ref'd n.r.e. per curiam, 489 S.W.2d 557 (Tex. 1972).(13)
       
Westlake, does not contend that Roanoke ever consented to the annexations. 
Rather, Westlake's position in its first amended motion for summary judgment and
in this court is that Roanoke is barred from challenging the validity of the
annexations because of a conclusive statutory presumption, as follows:

 
 § 43.901.
 Circumstances in which Consent to Boundaries or Annexation is Presumed
 
 A municipal ordinance defining
 boundaries of or annexing area to a municipality is conclusively presumed to
 have been adopted with the consent of all appropriate persons if:


 
        
 (1) two years have expired after the date of the adoption of the ordinance,
 and
 


 
        
 (2) an action to annul or review the adoption of the ordinance has not been
 initiated in that two-year period.
 
 

Tex.
Loc. Gov't
Code Ann.
§ 43.901 (Vernon 1999).
       
In Murphy, the Supreme Court of Texas held that the consent required of
"all appropriate persons" by this statute applies to municipalities as
well as individuals and residents in the annexed area, and interpreted this
section to be a statute of limitations resulting in a complete bar, as a matter
of law, to any challenge after two years.  932 S.W.2d at 481.
       
Roanoke argues that section 43.901 was not adopted until 1987 and seeks to
distinguish Murphy on the basis that all of the acts of the cities in
that case took place after the statute was enacted.  Roanoke contends that,
because the statute contains no language making it retrospective in operation,
it does not apply to the 1985 annexations by Westlake. See Tex.
Gov't Code
Ann. § 311.022 (Vernon 2000)
("A statute is presumed to be prospective in its operation unless expressly
made retrospective.").  Although there was no comparable provision to
section 43.901 in the original Act, Westlake responds that the predecessor
statute to section 43.901 was a statute passed in 1949, which likewise contained
a conclusive presumption, providing as follows:

 Art. 974c-4.
 Annexation or definition of boundaries; validation
  Section 1.  All city charters,
 city charter amendments, ordinances and proceedings of the governing bodies of
 all incorporated cities, including home rule cities, defining the boundaries
 of such incorporated cities or annexing thereto territory adjoining any such
 city with the consent of a majority of the inhabitants of such annexed
 territory, are hereby ratified and confirmed.


 Sec. 2.  After the expiration
 of two (2) years from the date of any ordinance defining boundaries of or
 annexing territory to any incorporated city, consent to the annexation and
 inclusion of such territory in such city shall be conclusively presumed if no
 action has been commenced to annul or review such act.


 Sec. 2A.  The provisions of this
 Act shall not apply to any territory of any city where the annexation of such
 territory is the subject of any pending litigation at the time of passage of
 this Act.(14)
  

        
We agree with Westlake that, under former article 974c-4, containing almost
identical language to section 43.901, as construed by the supreme court in Murphy,
Roanoke's consent to the 1985 Ordinance Nos. 138 and 139 is conclusively
presumed.  We also note that curative and validating statutes may be
considered retrospective in effect.  City of Deer Park v. State ex rel.
Shell Oil Co., 154 Tex. 174, 182, 275 S.W.2d 77, 82 (1954) (op. on reh'g)
(noting that municipalities have no contract right in boundaries and legislature
has same authority to enact legislation decreasing boundaries as it does to
validate ordinances increasing boundaries).  Accordingly, we hold that the
trial court correctly granted summary judgment in favor of Westlake regarding
the 1985 annexations.  We overrule Roanoke's second issue.

 C. Validity of the 1995
 Annexation Ordinance

      
By its first issue, Roanoke contends that the trial court erred in ruling that
Westlake's annexation of a 58.96 acre tract by Ordinance Nos. 236, 237, and 253
were valid because of procedural inadequacies in Westlake's first amended motion
for summary judgment.  Roanoke's fourth issue complains that the trial
court erred in granting Westlake's first amended motion and in failing to grant
its first amended motion for summary judgment asserting that Ordinance Nos. 236,
237, and 253 are void as a matter of law.  Both parties agree that the
issue of the validity of Ordinance Nos. 236, 237, and 253 is one of law.

 
 1. Adequacy of Westlake's
 First Amended Motion
 

       
Roanoke first complains that the trial court erred in declaring that Westlake
Ordinance No. 236 is valid because Westlake failed to present the validity of
that ordinance as an issue in its first amended motion for summary judgment.(15) 
We disagree.  Westlake asserted in that motion that it properly included
the "Property" within its corporate limits, described as certain
property lying within the Westlake corporate limits, "some of which"
was annexed in 1985, and "some of which was allegedly disannexed and
released to Roanoke" on May 2, 1997.  Westlake further alleged that
"Roanoke has no claim to the Property" at issue and that such property
cannot be annexed by Roanoke.  Among the enumerated "facts"
listed by Westlake as established by its summary judgment evidence as a matter
of law are the following: "(7) On March 6, 1995, Westlake passed Ordinance
236 re-establishing its corporate boundaries . . . [and] (8) On March 6, 1995,
Westlake passed Ordinance 237 adopting a map of its corporate boundaries . . .
."  In the portion of Westlake's motion titled "Argument and
Authorities," Westlake also stated that its summary judgment evidence
showed that Roanoke's attack on Westlake's Ordinance Nos. 138, 139, 236, and 237
was without merit.  Westlake's motion further contained a specific section
entitled: "Roanoke's Attack on Westlake Ordinance Nos. 138, 139, 236 and
237 Fail as a Matter of Law," expressly urging that "Westlake asserts
that those ordinances are valid and include the Property within the town's
borders."
       
Rule 166a(c) states that "the motion for summary judgment shall state the
specific grounds therefor."  Tex.
R. Civ. P. 166a(c).  While
grounds must be stated expressly in a motion, they may be stated without detail
or argument.  McConnell, 858 S.W.2d at 339.  A movant is not
required to specifically describe how evidence in support of the motion
justifies a summary judgment; merely identifying a theory of liability or
defense will suffice.  See, e.g., Garcia v. S. Tex. Sec. & Alarm
Co., 911 S.W.2d 483, 485 (Tex. App.--Corpus Christi 1995, no writ); Conquistador
Petro., Inc., v. Chatham, 899 S.W.2d 439, 441-42 (Tex. App.--Eastland 1995,
writ denied); Hennessey v. Vanguard Ins. Co., 895 S.W.2d 794, 801 (Tex.
App.--Amarillo 1995, writ denied).  "So long as the ground appears in
the motion or response, it need not be supported by factual detail or legal
argument."  Timothy Patton,
Summary Judgments
in Texas,
§ 3.05 (3d ed. 2002); see Conquistador Petro., 899 S.W.2d at 442.
       
Grounds are sufficiently specific if they give "fair notice" to the
nonmovant. Westchester Fire Ins. Co. v. Alvarez, 576 S.W.2d 771, 773
(Tex. 1978), overruled on other grounds by Clear Creek, 589 S.W.2d at
673; Dear v. City of Irving, 902 S.W.2d 731, 734 (Tex. App.--Austin
1995, writ denied); Patton, supra,
§ 3.05 (3d ed. 2002).  Where grounds are ambiguous or unclear, the
nonmovant must specially except to the form of the motion and give the movant an
opportunity to amend before the nonmovant can raise the complaint on appeal. 
McConnell, 858 S.W.2d at 341; Alder v. Laurel, 82 S.W.3d 372,
376 (Tex. App.--Austin 2002, no pet.).  Westlake's motion might, at most,
be construed as unclear or as lacking specificity in stating that it validly
annexed the property, "some of which" was annexed in 1985. 
Roanoke failed, however, to specially except to that generalized allegation. 
Moreover, subsequent specific statements in Westlake's motion made clear that
Westlake was asserting that Ordinance No. 236, annexing the 58.96 acre tract,
was valid.
       
Additionally, Roanoke's own response recognized that Westlake was presenting the
issue of the validity of Ordinance No. 236.  Roanoke's response stated,
"Westlake has asserted it is entitled to judgment on the issues in its
motion and has offered as proof that Westlake Ordinance Nos. 236 and 237 are
valid (and not void as Roanoke has pleaded), the very statutes whose validity is
a primary issue . . . ."  Roanoke's response further acknowledged:
"Roanoke does not dispute that on or about March 6, 1995, Westlake passed
Ordinance No. 236.  Roanoke is disputing the validity of Ordinance No. 236
. . . ."  On page 16 of Roanoke's response, a subheading states,
"5. Westlake Ordinances Number 138, 139, 236 and 237 are void." 
Under that subheading, Roanoke "adopts its arguments in Plaintiff's First
Amended Motion for Summary Judgment for its response to Westlake's argument
concerning Ordinance number 236 . . . ." and notes that its complaint about
Ordinance No. 237 pertains only to the inclusion of the 58.96 acre tract in the
map of Westlake's boundaries.  Roanoke's own motion and response are
accompanied by summary judgment evidence addressing both Ordinance Nos. 236 and
237.
       
Because Roanoke provided responsive argument and evidence regarding the very
issues that it now claims Westlake's motion failed to raise, and because Roanoke
did not specially except to the specificity of Westlake's motion, we hold that
Westlake's first amended motion sufficiently raised the issue of the validity of
Ordinance Nos. 236 and 237.  See Torres v. City of Waco, 51 S.W.3d
814, 823 (Tex. App.--Waco 2001, no pet.) (overruling complaint regarding lack of
specificity where nonmovant provided summary judgment evidence responsive to the
element he claimed the movant failed to raise, thereby showing that he
understood that element was in issue).  Accordingly, we overrule Roanoke's
first issue.

 
 2.  Validity of the 1995
 Annexation
 

       
By its fourth issue, Roanoke contends that the trial court erred in granting
Westlake's first amended motion and in denying its partial motion for summary
judgment by declaring that Westlake Ordinance No. 236, adopted March 6, 1995,
annexing the 58.96 acre tract was valid because Westlake failed to obtain
Roanoke's written consent to the annexation.  See Tex.
Loc. Gov't
Code Ann.
§ 42.023. Section 42.023 states,

 The extraterritorial jurisdiction of a
 municipality may not be reduced unless the governing body of the municipality
 gives its written consent by ordinance or resolution, except in cases of
 judicial apportionment of overlapping extraterritorial jurisdictions under
 Section 42.901.
 

Id. 
Because Roanoke filed suit to challenge that annexation in February 1997, within
two years of the annexation, Roanoke argues that the conclusive presumption of
consent provided by local government code section 43.901 does not apply.  See
id. § 43.901.
       
Westlake does not argue that Roanoke gave consent to this annexation but
contends that the property was annexed under a section of the local government
code that did not require Roanoke's consent.  Specifically, the statute
pursuant to which this tract was expressly annexed is local government code
section 43.071, which provides as follows:

 43.071. Authority to Annex Water
 or Sewer District
        
 (a) In this section, "water or sewer district" means a district or
 authority created under Article III, Section 52, Subsections (b)(1) and (2),
 or under Article XVI, Section 59, of the Texas Constitution that provides or
 proposes to provide, as its principal function, water services or sewer
 services or both to household users. The term does not include a district or
 authority the primary function of which is the wholesale distribution of
 water.
        
 (b) A municipality may not annex area in a water or sewer district unless it
 annexes the entire part of the district that is outside the municipality's
 boundaries. This restriction does not apply to the annexation of area in a
 water or sewer district if the district is wholly or partly in the
 extraterritorial jurisdiction of more than one municipality.
        
 (c) An annexation subject to Subsection (b) is exempt from the provisions of
 this chapter that limit annexation authority to a municipality's
 extraterritorial jurisdiction if:


 
 (1) immediately before the annexation,
 at least one-half of the area of the water or sewer district is in the
 municipality or its extraterritorial jurisdiction; and
 (2) the municipality does not annex in
 the annexation proceeding any area outside its extraterritorial jurisdiction
 except the part of the district that is outside its extraterritorial
 jurisdiction.
 

Tex.
Loc. Gov't
Code Ann.
§ 43.071 (Vernon 1999).
       
Whether the legislature eliminated the consent requirement for the reduction of
Roanoke's ETJ, caused by Westlake's annexation of the 58.96 acre tract under
section 43.071, rests upon statutory construction of the local government code. 
See Johnson v. City of Fort Worth, 774 S.W.2d 653, 656 (Tex. 1989). 
Our primary objective in construing a statute is to determine and give effect to
the legislature's intent.  Phillips v. Beaber, 995 S.W.2d 655, 658
(Tex. 1999).  In determining the legislature's intent, we first look to the
statute's plain and common meaning and presume that the legislature intended the
plain meaning of its words.  Fleming Foods v. Rylander, 6 S.W.3d
278, 282, 284 (Tex. 1999). Further, in construing a statute, we may consider
among other matters the:  (1) object sought to be attained; (2)
circumstances under which the statute was enacted; (3) legislative history; (4)
common law or former statutory provisions, including laws on the same or similar
subjects; (5) consequences of a particular construction; (6) administrative
construction of the statute; and (7) title (caption), preamble, and emergency
provision.  Tex. Gov't
Code Ann.
§ 311.023 (Vernon 1998); see also Brown v. Owens, 674 S.W.2d
748, 750 (Tex. 1984) (In determining the legislature's intent, we must consider
"the entire Act, its nature and object, and the consequences which follow
from each construction.").
       
We also determine legislative intent from the entire act and not just from
isolated portions.  State Dep't of Highways & Pub. Transp. v.
Gonzalez, 82 S.W.3d 322, 327 (Tex. 2002).  Therefore, we will not give
one provision a meaning out of harmony or inconsistent with other provisions
even though it might be susceptible to such a construction if standing alone. 
Marcus Cable Assocs., L.P. v. Krohn, 90 S.W.3d 697, 706 (Tex. 2002). 
We must presume that the legislature chose its words carefully, recognizing that
every word in a statute was included for some purpose and that every word
excluded was omitted for a purpose.  In re M.J.M.L., 31 S.W.3d
347, 354 (Tex. App.--San Antonio 2000, pet. denied); Renaissance Park v.
Davila, 27 S.W.3d 252, 257 (Tex. App.--Austin 2000, no pet.). 
Likewise, we presume the legislature intended a just and reasonable result in
enacting a statute.  Tex. Gov't
Code Ann.
§ 311.021(3) (Vernon 1998).  We will not construe a statute in a manner
that will lead to a foolish or absurd result when another alternative is
available.  S.W. Bank v. Info. Support Concepts, Inc., 85 S.W.3d
462, 464 (Tex. App.--Fort Worth 2002, pet. filed).
       
Roanoke contends that the second sentence of section 43.071(b) creates an
exception to the rule created by the first sentence, by which the legislature
implicitly recognized the consent provision of section 42.023, requiring a
municipality to consent to reduction of its ETJ.  Tex.
Loc. Gov't
Code Ann.
§ 43.071(b) (stating that the restriction requiring a city to annex all or none
of a Municipal Utility District ("MUD") does not apply "if the
district is wholly or partly in the ETJ of more than one municipality"). 
Westlake argues that the first sentence of section 43.071(b) requires a
municipality either to annex all of the water or sewer district or none of it to
avoid a water or sewer district lying in multiple jurisdictions.(16)
       
Westlake points to legislative history that reveals the purpose of section
43.071 is to prohibit annexation of only a part of a MUD; therefore, the statute
generally requires that the entire district must be annexed.  House Study
Group, Bill Analysis, Tex. H.B. 656, 65th Leg., R.S. (1977).  As
explained in the arguments for the bill, "A city should annex the whole
district or leave it alone.  Districts shouldn't be split."  Id. 
This is, as the bill analysis further explains, because MUDs are
"governmental units" representing a community of interest and partial
annexation would break up the unit; create confusion in operation, taxation, and
utility rates; and offer opportunity for abuse as officials try to divide the
district's debts, set new rates, and work out contracts while the district
operates at a political and legal disadvantage if its board is split by the
annexation.  Id.
       
The House Bill Analysis also states, however, that "[d]istricts in two or
more ETJs are not covered by the bill."  Id.  Roanoke
argues that this statement means that the statute was not intended to apply to a
MUD that lies in "overlapping" ETJs.  Thus, Roanoke contends that
the general rule of section 42.023 requiring that a municipality obtain the
consent of another municipality before reducing the other's ETJ applies in the
instant case.  See Tex.
Loc. Gov't
Code Ann.
§ 42.023.
       
Westlake responds that this interpretation of section 43.071 is neither
supported by the wording of the statute nor the rules of statutory construction. 
Rather, Westlake argues that section 43.071 is self-contained, prescribing
specific rules peculiar to annexation of MUDs.  Absent an explicit
requirement for consent contained in that statute, Westlake contends it was not
required to obtain Roanoke's consent for the annexation of the 58.96 acre tract
that was a part of MUD No. 3, even though a portion of the tract was within
Roanoke's ETJ.
       
Westlake notes that lack of a consent requirement is not unique to this statute. 
As an example, Westlake cites Murphy, in which the supreme court held
that failure of the City of Parker to obtain the City of Murphy's written
consent prior to annexation of land within the City of Murphy's ETJ did not
render the annexation void. 932 S.W.2d at 482.  This was true, and
distinguishable from the case at bar, because the issue was not raised within
two years as required by section 43.901, which gave rise to a conclusive
presumption that the City of Murphy had given its consent.  Id. 
As discussed above, Westlake cannot rely on section 43.901's conclusive
presumption of consent to serve as a bar to Roanoke's challenge to the validity
of Ordinance No. 236.  See Tex.
Loc. Gov't
Code Ann.
§ 43.901.
       
Westlake directs us to a footnote in Murphy in which the supreme court
discussed the municipal annexation scheme and noted that "the [l]egislature
has the power to entirely eliminate the requirement that a city give its written
consent to a reduction of its ETJ." Murphy, 932 S.W.2d at 481 n.1. 
We do not disagree that the legislature has the authority to so act; however,
the issue before us is whether the legislature exercised this power and
eliminated the consent requirement with respect to section 43.071.  See
Tex.
Loc. Gov't
Code Ann.
§ 43.071.
       
As an example of a statute eliminating consent, Westlake refers to section
43.072, which expressly allows a home-rule city to annex a MUD located entirely
within the ETJ of a single general-law municipality, without consent of that
municipality.  Tex.
Loc. Gov't
Code Ann.
§ 43.072.  Section 43.072(d) provides as follows:

 Annexation of area under this section is
 exempt from the provisions of this chapter that prohibit:

           
. . . .

 (3)    reduction
 of the extraterritorial jurisdiction of a municipality without the written
 consent of the municipality's governing body.
 
 

Id. § 43.072(d) (emphasis
added).
       
We agree with Roanoke that a comparison of these two sections of the local
government code supports Roanoke's position rather than that of Westlake, by
illustrating that, if the legislature had intended to eliminate the consent
requirement in section 43.071, it could have done so expressly as it did in
section 43.072.  See Tex.
Loc. Gov't
Code Ann.
§§ 43.071, 43.072.
       
Another example of express legislative intent to dispense with the consent
requirement is found in the text of House Bill 584, introduced in the 78th
Legislature.  Tex. H.B. 584, 78th Leg., R.S. (2003).  House
Bill 584 relates to the transfer of ETJ between two general-law municipalities
and unequivocally states in proposed section 42.027(f) of the local government
code, "Section 42.023 does not apply to the reduction made under this
section to the extraterritorial jurisdiction of the first municipality." 
Id.
       
Westlake also argues that public policy favors the exercise of jurisdiction by a
single municipality (rather than by multiple municipalities) so that development
of the MUD will not be subject to varying and inconsistent objectives by
competing cities.  We do not disagree with this general statement; however,
we disagree as to the manner by which Westlake seeks to resolve the claims
associated with the attempted annexation of the 58.96 acre tract found in the
overlapping ETJs of Roanoke and Westlake.
       
If we were to agree with Westlake's interpretation of section 43.071, we would
effectively have to write language into the statute to eliminate the consent
requirement.  We are reluctant to do so because "[w]e are not
permitted by statutory construction to add additional language to the statute
unless it is necessary to give effect to clear legislative intent."  Sem
v. State, 821 S.W.2d 411, 416 (Tex. App.--Fort Worth 1991, no writ) (citing
Hunter v. Fort Worth Capital Corp., 620 S.W.2d 547, 552 (Tex. 1981)). 
Because no truly extraordinary circumstances are present in this case showing an
unmistakable legislative intent to divert us from enforcing the statute as
written, we decline to judicially amend section 43.071 to dispense with the
consent requirement.  See Fitzgerald v. Advanced Spine Fixation Sys.,
Inc., 996 S.W.2d 864, 867 (Tex. 1999).
       
We conclude that Westlake was required by section 42.023 to obtain Roanoke's
written consent for the annexation of the 58.96 acre tract pursuant to section
43.071; thus, as a matter of law, Ordinance No. 236 was void.  See City
of Houston v. Savely, 708 S.W.2d 879, 887 (Tex. App.--Houston [1st
Dist.] 1986, writ ref'd n.r.e.) ("An ordinance that attempts to annex
territory within the [ETJ] or municipal boundaries of another city is
void."), cert. denied, 482 U.S. 928 (1987); see also McGregor,
523 S.W.2d at 653-54.  Accordingly, the trial court erred in granting
Westlake's first amended motion for summary judgment and erred in denying
Roanoke's first amended motion on this ground.  We sustain Roanoke's fourth
issue.
       
While Westlake states in its brief that Roanoke could have brought suit under
section 42.901 to have the land in the overlapping ETJs of Roanoke and Westlake
judicially apportioned, Westlake incorrectly expresses its view that Roanoke has
not at any time sought relief under section 42.901.  Roanoke's pleadings
specifically requested judicial apportionment under 42.901 of the overlapping
ETJs of Westlake and Roanoke.  Judicial apportionment under section 42.901
is the mechanism the legislature established in the event municipalities with
overlapping ETJs as of August 23, 1963 are unable to reach an agreement among
themselves as to how to apportion the overlapped area.  See Tex.
Loc. Gov't
Code Ann.
§ 42.901.  This is the remedy available to the parties involved in this
case.
VII. CONCLUSION
       
Having overruled Roanoke's first three issues and having sustained its fourth
issue, we reverse that portion of the trial court's judgment declaring Ordinance
Nos. 236, 237, and 253 to be valid, and we render judgment that Ordinance Nos.
236, 237, and 253 are void.  We affirm the judgment in all other respects,
and we remand the case for further proceedings in accordance with this opinion.
 
                                                       
   ANNE GARDNER
                                                       
   JUSTICE
PANEL A: CAYCE, C.J.; DAY and GARDNER, JJ.
DELIVERED: May 22, 2003

1.  The governing body of a Type A municipality
consists of a mayor and five aldermen.  Tex.
Loc. Gov't
Code Ann.
§ 22.031(b) (Vernon 1999).
2.  Under the local government code, the ETJ of a
municipality is "the unincorporated area that is contiguous to the
corporate boundaries of the municipality and that is located . . . within
one-half mile of those boundaries, in the case of a municipality with fewer than
5,000 inhabitants").  Id. § 42.021(1); see also Maguire
Oil Co. v. City of Houston, 69 S.W.3d 350, 356 n.2 (Tex. App.--Texarkana
2002, pet. denied).
3.  Annexation of those tracts was upon application
of the landowners.  See Tex.
Loc. Gov't
Code Ann.
§ 43.028(b) (Vernon 1999) (authorizing municipalities to annex sparsely
occupied areas on petition of area landowners).
4.  On May 9, 1997, despite the election and the
actions of Bradley, the disannexing Aldermen attempted to ratify their previous
actions of May 2, 1997.  Also, on May 9 and again on May 12, 1997, the new
Board of Aldermen of Westlake repudiated the actions of the disannexing Aldermen
of May 2 and May 9, 1997.  On May 12, 1997, Bradley once again vetoed the
actions purportedly taken by the disannexing Aldermen.
5.  By its suit Roanoke also sought to have Ordinance
Nos. 237 and 253, adopting the official map including that land within
Westlake's boundaries and redefining Westlake's corporate limits, declared void.
6.  On May 12, 1997, Westlake also filed a
counterclaim repudiating the settlement agreement, characterizing it as an
unauthorized sham and a fraud, as a part of a conspiracy among the disannexing
Aldermen to dissolve the Town of Westlake, which included removing Bradley as
mayor, in order to carry out their plan.  After the trial court vacated its
judgment, Westlake took a non-suit as to that counterclaim.
7.  We also clarify what is not in issue. Roanoke has
never pleaded nor pursued any relief based upon its attempted annexations in
1985 of the two tracts previously annexed by Westlake.  Additionally,
Roanoke does not complain of the trial court's rulings that the purported
disannexations by Westlake of the tracts in May 1997 are void.
8.  We view the evidence and its reasonable
inferences in the light most favorable to the nonmovant. Great Am. Reserve
Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex. 1965). 
All conflicts in the evidence are disregarded and any evidence favorable to the
nonmovant is accepted as true.  Rhone-Poulenc, 997 S.W.2d at 223;
Harwell v. State Farm Mut. Auto Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995). 
Evidence favoring the movant is not considered unless it is uncontroverted. Great
Am., 391 S.W.2d at 47.
9.  Section 22.038(b) of the local government code
requires that special meetings be called by the mayor:

 (b) The mayor may call a special
 meeting on the mayor's own motion or on the application of three
 aldermen.  Each member of the governing body, the secretary, and the
 municipal attorney must be notified of the special meeting.  The notice
 may be given personally or left at the person's usual place of residence.

Tex.
Loc. Gov't
Code Ann.
§ 22.038(b) (Vernon 1999) (emphasis added).
10.  See Village of Creedmoor v. Frost Nat'l
Bank, 808 S.W.2d 617, 618 (Tex. App.--Austin 1991, writ denied) (citing Beyer
v. Templeton, 147 Tex. 94, 101, 212 S.W.2d 134, 138 (1948) (stating rule
that "whoever first commences legal proceedings asserting authority over
the territory in question thereby acquires jurisdiction over same")); see
generally, 22 David B. Brooks,
Texas Practice:
Municipal Law
and Practice § 1.13 (2d
ed. 1999).
11.  Act of April 29, 1963, Municipal Annexation
Act, 58th Leg., R.S., ch. 160, 1963 Tex. Gen. Laws 447.
12.  The first in time rule remains viable in
awarding exclusive jurisdiction over areas sought to be incorporated or annexed
by a municipality. City of San Antonio v. City of Boerne, 61 S.W.3d
571, 575 (Tex. App.--San Antonio 2001, pet. granted) (op. on reh'g); Village
of Creedmore, 808 S.W.2d at 618 (acknowledging that statutory framework for
ETJ factors into the determination of jurisdiction rather than priority in time,
alone).  The statutory provisions are silent, however, as to priority of
jurisdiction in the event of overlapping ETJ's.
13.  The statute in effect in 1985 likewise provided
that "[t]he [ETJ] of a city shall not be reduced without the written
consent of the governing body of such city . . . ."  Act of April 29,
1963, Municipal Annexation Act, 58th Leg., R.S., ch. 160, § 3C.,
1963 Tex. Gen. Laws 447, 448-49 repealed by Act of May 1,1987, 70th
Leg., R.S., ch. 149, § 49(1), 1987 Tex. Gen. Laws 707, 1306 (current version at
Tex. Loc.
Gov't Code
Ann. § 42.023).
14.  Act of June 21, 1949, 51st Leg., R.S.,
ch. 508, §§ 1-2A, 1949 Tex. Gen. Laws 934-35 (emphasis added), repealed by
Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 49(1), 1987 Tex.
Gen. Laws 707, 1306 (amended 2001) (current version at Tex.
Loc. Gov't
Code Ann.
§ 43.901) (Vernon Supp. 2003).
15.  On the same date that Westlake passed Ordinance
No. 236, it also passed Ordinance No. 237, adopting a metes and bounds official
map of its boundaries to include the 58.96 acre tract, as well as two previously
annexed tracts, within its corporate limits.  On May 6, 1996, Westlake
passed Ordinance No. 253, redefining its boundaries to include the tracts. 
Ordinance Nos. 237 and 253 purport to reflect the effect on Westlake's
boundaries of its annexation of the 58.96 acre tract.
16.  We note that at least one commentary on section
43.071 presents a similar argument to the one made by Roanoke:

        
 A city is required to annex either all or none of a water district's
 territory. This restriction does not apply if more than half of the water
 district is located outside of the city's extraterritorial jurisdiction, if
 the district is located within the extraterritorial jurisdiction of another
 city, or if the city perfects a strip annexation with district and property
 owner consent.

36A David
B. Brooks, Texas
Practice: County
and Special District
Law § 46.20 (2d ed. 2002) (citing
Tex. Loc.
Gov't Code
Ann. § 43.071).